[No. B193002. Second Dist., Div. Eight. June 6, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
ERNEST JOSEPH CARRASCO, Defendant and Appellant.

COUNSEL

Karyn H. Bucur, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Keith H. Borjon and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

RUBIN, J.—

## INTRODUCTION

Defendant and appellant Ernest Joseph Carrasco (appellant) challenges his convictions of attempted arson and two counts of resisting an executive officer. He contends (1) there was insufficient evidence to support his conviction for attempted arson; (2) the trial court should have instructed the jury on the lesser included offense of resisting a peace officer; (3) the trial court abused its discretion in denying appellant posttrial access to juror information and by denying his motion to dismiss a "Three Strikes" allegation, remanded for resentencing. We affirm his conviction with a limited remand for sentencing.

## BACKGROUND

One morning in May 2005, appellant approached the Pico Rivera sheriff's station and asked if anyone had change for a dollar. Repeating his question to Deputy Raul Macias, who was at the front desk, appellant asked, "Do you have change, bitch?" Macias told appellant he needed to leave the station, but

appellant continued to press for change. After Macias again told him to move on, appellant slowly backed away from the door, continuing to act bizarrely and staring at Macias as if "trying to intimidate" him. About 30 seconds later, appellant returned holding a soda can in his left hand and straddling a bicycle with a duffle bag secured to its handlebars. Appellant opened the door to the sheriff's station, mouthed the words "fuck you" to Macias and then asked, "You have a fucking problem?" Macias walked from behind the counter toward appellant and told him to leave. Appellant took two steps back and placed his right hand inside the duffle bag.

Macias ordered appellant to remove his hand from the duffle bag two to three times, but appellant refused. Fearing for his safety, Macias reached for his service revolver, and appellant said, "Go ahead, bitch, fucking shoot me," a challenge he repeated more than once.

Detective Jim McGuffin came from the back of the station and grabbed appellant's waist. Appellant pulled his right hand from the duffle bag and tried to ride away on his bike, but McGuffin forced him to the ground. As Deputy Macias held on to appellant's torso, three other detectives attempted to control his arms. Ten to 15 other officers were present at the scene. Officers told appellant to relax and put his hands behind his back, but he refused. Continuing to struggle, he placed his hands underneath his body while "yelling, kicking, [and] cussing" and saying he would "kick [their] ass[es]." Deputy Macias said, "Stop resisting," but appellant continued to squirm and refused to give his right hand. Lieutenant Michael Rothans held appellant's shoulders and three or four times told him to relax and place his hands behind his back. Rothans then pepper sprayed appellant.

At that point, appellant complied and officers handcuffed him. Officers found a lighter in appellant's right hand. Calling the deputies "fucking assholes," appellant said, "This is bullshit. You can get your ass kicked." He also said, "*I should have done it.*" (Italics added.) Inside his duffle bag was a one-gallon gasoline container that was approximately three-quarters full and two wet strips of cloth smelling of gasoline. Arson investigator Detective Irma Gonzales testified that if someone lit a lighter inside a duffle bag containing gas-soaked rags, the bag would catch fire. Detective Gonzales further testified that appellant "absolutely had the means and the components necessary to initiate a fire."

## DISCUSSION

1. *Substantial Evidence Supports Appellant's Conviction for Attempted Arson.*

Appellant contends the evidence is insufficient to support his conviction for attempted arson because the evidence demonstrated only preparation. To resolve this issue, we review the record in the light most favorable to the judgment to decide whether substantial evidence exists so that a reasonable jury could have found the defendant guilty beyond a reasonable doubt. (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138 [17 Cal.Rptr.2d 375, 847 P.2d 55], citing *People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738]; *Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 99 S.Ct. 2781].)

█ Penal Code section 455 punishes "[a]ny person who willfully and maliciously attempts to set fire to or attempts to burn . . . any . . . property, or who commits any act preliminary thereto, or in furtherance thereof . . . ."[1] " 'In order to establish an attempt, it must appear that the defendant had a specific intent to commit a crime and did a direct, unequivocal act toward that end; preparation alone is not enough, and some appreciable fragment of the crime must have been accomplished.' " (*People v. Archibald* (1958) 164 Cal.App.2d 629, 633 [331 P.2d 69] (*Archibald*).) In *Archibald,* the defendant was convicted of attempt to burn, and appealed on the ground of insufficient evidence to show "specific intent to commit a crime or of any act other than mere preparation." (*Id.* at p. 632.) The appellate court disagreed and held there was sufficient evidence for the jury to convict the defendant when (1) the record contained evidence to "sustain an inference that the defendant had stuffed a towel with gasoline upon it, together with a lighted cigar butt, as well as the crumpled papers, through the ventilator into the ladies' rest room with intent to set fire to the building," and (2) the defendant testified he believed his boss, "upon finding the papers, would think somebody was trying to burn his building down." (*Id.* at p. 633.)

█ Here, as in *Archibald,* there is sufficient evidence by which a rational jury could have found appellant guilty beyond a reasonable doubt of committing "a direct, unequivocal act" toward "willfully and maliciously . . . attempt[ing] to burn." (*Archibald, supra,* 164 Cal.App.2d at p. 633; see § 455.) Appellant was just inside the front doors of the Pico Rivera sheriff's station. With a lighter in his right hand, he reached inside a duffle bag containing two wet strips of cloth smelling of gasoline and a one-gallon gasoline container that was approximately three-quarters full. After he was

---

[1] All further section references are to the Penal Code unless otherwise indicated.

arrested and deputies confiscated the lighter, appellant stated, "I should have done it." Furthermore, arson investigator Gonzales testified that appellant "absolutely had the means and the components necessary to initiate a fire." On these facts, a reasonable jury could have found appellant guilty of attempt to burn.

2. *The Trial Court Properly Refused to Instruct the Jury on the Lesser Included Offense of Penal Code Section 148, Subdivision (a)*

Appellant was convicted on two counts of resisting an executive officer in violation of section 69.[2] He contends the trial court should have instructed the jury on section 148, subdivision (a), as a lesser included offense of section 69. We recently held in *People v. Lacefield* (2007) 157 Cal.App.4th 249 [68 Cal.Rptr.3d 508] (*Lacefield*), that in a proper case section 148, subdivision (a) is a lesser included offense of section 69, but we find no substantial evidence supported instructing on that lesser offense here.

■ "California law has long provided that even absent a request, and over any party's objection, a trial court must instruct a criminal jury on any lesser offense 'necessarily included' in the charged offense, if there is substantial evidence that only the lesser crime was committed." (*People v. Birks* (1998) 19 Cal.4th 108, 112 [77 Cal.Rptr.2d 848, 960 P.2d 1073].) "Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." (*Id.* at p. 117.)

■ Section 69 " 'sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty.' "[3] (*Lacefield, supra*, 157 Cal.App.4th at p. 255, quoting *In re Manuel G.* (1997) 16 Cal.4th 805, 814 [66 Cal.Rptr.2d 701, 941 P.2d 880].) Those two ways of violating section 69 have been called " 'attempting to deter' " and " 'actually resisting an officer.' " (*Lacefield*, at p. 255, citing *People v. Lopez* (2005) 129

---

[2] Police officers are "executive officers" under section 69. (*People v. Williams* (1999) 72 Cal.App.4th 1460, 1463, fn. 5 [86 Cal.Rptr.2d 62].)

[3] Section 69 states: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, *or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty,* is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment." (Italics added.)

Cal.App.4th 1508, 1530 [29 Cal.Rptr.3d 586].) The first type of offense can be established by " '[a] threat, unaccompanied by any physical force' " and may involve either an officer's immediate or future performance of his duty. (*Lacefield*, at p. 255, citing *Manuel G.*, at pp. 814, 817.) The second type of offense involves " 'force or violence' " by the defendant against an officer engaged in his duties at the time of the defendant's resistance. (*Lacefield*, at p. 255.) We refer to them as "the first type of offense" and "the second type of offense," nomenclature *Lacefield* adopted from *Manuel G.* (*Lacefield*, at p. 255.)

Here, the accusatory pleading alleged both kinds of section 69 offenses, but the prosecutor chose to prosecute appellant under only the second prong: resisting an officer by force. The jury was therefore instructed that the People had to prove that "[1]. A person knowingly and unlawfully resisted an executive officer in the performance of his duties; and [¶] [2]. The resistance was accomplished by means of force or violence."

Section 148, subdivision (a)(1) provides in part, "[e]very person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty" has committed a punishable offense. Because an accused cannot have resisted arrest forcefully without also having resisted arrest, we agree with *Lacefield* that section 148, subdivision (a) is a lesser included offense to section 69's second prong. Nevertheless, we conclude the failure to instruct with section 148, subdivision (a) here was not error because there was no substantial evidence that would support a conviction of the lesser offense.

Appellant contends the court erred because a reasonable jury could have concluded he was guilty of misdemeanor resisting a peace officer because he "was on a bike, drinking a soda from a can, and was taunting the police while they were working at the police station. The jury could have concluded that appellant's conduct of not taking his hand out of the bag and resisting the officers when they pulled off the bicycle, as [the lesser offense of] resisting and obstructing these officers during their duties" without the use of force or violence.

We disagree, for if appellant resisted the officers at all, he did so forcefully, thereby ensuring no reasonable jury could have concluded he violated section 148, subdivision (a)(1) but not section 69. The People's witnesses testified appellant was knowingly and unlawfully resisting both Deputy Macias and Detective McGuffin through the use of force or violence. Appellant had to be physically taken to the ground by Detective McGuffin because he refused to comply with Deputy Macias's repeated orders to remove his hand from his duffle bag. Appellant failed to comply with several officers' repeated orders to

relax and Macias's orders to "stop resisting." He continued to struggle with Macias and McGuffin, as well as several other officers. Macias attempted to control appellant's torso, while three other detectives attempted to control appellant's arms. Appellant placed his hands and arms underneath his body, was "yelling, kicking, [and] cussing," and said he would "kick [the officers'] ass[es]." Appellant continued to squirm and refused to give his right hand to Macias. Appellant did not comply until after Lieutenant Rothans administered the use of pepper spray. There was no contrary evidence disputing the officer's description of the struggle on the floor. Hence, the jury would have had no rational basis to conclude appellant wrestled with the officers, for which they convicted him of resisting or delaying an officer, but the struggle did not involve force or violence; accordingly, the trial court properly instructed the jury by not instructing it with section 148, subdivision (a) as a lesser included offense.

3. *Access to Juror Information Was Properly Denied*

   a. *Relevant Proceedings*

After the jury returned a verdict, the clerk asked the jury if "these [are] your verdicts, so say you one, so say you all?" The jurors answered collectively in the affirmative. The court then asked each juror whether the verdicts reflected his or her individual verdict. Juror No. 2 initially gave no response. The court asked again, Juror No. 2 paused and then answered, "Yes." The remaining jurors left the courtroom, and the court engaged in the following colloquy with Juror No. 2:

"THE COURT: . . . [¶] Juror No. 2, you hesitated answering, and you teared up; and it appears that when you did give an answer, 'yes,' it was in a soft voice and you appear to be obviously emotionally distraught. [¶] Is the verdict that you rendered by saying yes to guilt as to counts 2, 3 and 4, is that your verdict? Is that your decision?

"JUROR NO. 2: No.

"THE COURT: All right. And it took Juror No. 2 some time to answer the question. [¶] Did you decide to vote the way you did because of the fact that you felt compelled because the other jurors were voting that way?

"JUROR NO. 2: Yes.

"THE COURT: Okay. So that is not your true intent to vote guilty for—I'm not going to designate which count, but your guilty verdict was because you felt compelled or pressured because the other jurors were voting that way; is that correct?

"JUROR NO. 2: (No response.)

"THE COURT: Go ahead and explain to me that—nobody will know about, the other jurors won't know about our discussion here—but I want to know what went on in the jury room that made you come up with a guilty verdict when you're now indicating that that was not really your desire or intent.

"JUROR NO. 2: I had reasonable doubt.

"THE COURT: Okay, and in spite of the reasonable doubt, you came back with a verdict of guilty. [¶] Tell me what went on in the jury room, basically as to why you changed that reasonable doubt to a verdict of guilty.

"JUROR NO. 2: I guess, you know, when they were saying it was a felony, I wasn't aware they were felony charges. That's what made me start crying.

"THE COURT: Well, the question is not whether or not they are felony charges or any other charge; that's not an issue. [¶] The issue is whether or not, based upon the evidence and everything you heard, you felt the defendant was guilty, irrespective of felony or what. [¶] The purpose of a jury is to decide the issue of guilt based upon the evidence and based upon the standard of reasonable doubt.

"JUROR NO. 2: Uh-huh.

"THE COURT: So I want to know—your vote was for guilty.

"JUROR NO. 2: Yes.

"THE COURT: And now are you having second thoughts because you gleaned that the charges are a felony?

"JUROR NO. 2: Yes.

"[PROSECUTOR]: Well, I believe she has indicated that her findings were for guilt and—

"[DEFENSE COUNSEL]: Your Honor, I have to confess I've never had this situation before.

"THE COURT: I don't think any of us have had this, and I want to be satisfied. [¶] First of all, this is your own personal decision; nobody in the jury room during deliberations put any pressure on you?

"JUROR NO. 2: No.

"THE COURT: That answer is no?

"JUROR NO. 2: No.

"THE COURT: Okay, so the reason why you are now somewhat equivocating on your vote is because you believe—or you have reason to believe that the charges constitute a felony; is that right?

"JUROR NO. 2: Yes.

"THE COURT: But otherwise, based upon everything that you heard, all the evidence and the instructions the court gave you on the law, the argument of the attorneys, you were satisfied the defendant was guilty beyond a reasonable doubt? Going that far?

"JUROR NO. 2: Yes.

"[PROSECUTOR]: And that was the only thing she was asked to do. [¶] . . . [¶]

"[DEFENSE COUNSEL]: Your honor, are we allowed to inquire at all?

"THE COURT: I don't think so at this point in time, Ms. Williams [defense counsel]. . . . That's something we'll have to explore later, I think, if that should arise. [¶] But just so that I have an understanding, because this may or may not lead to something else that doesn't per se involve you, your concern now is and your hesitation now is that the defendant may have been charged with felonies?

"JUROR NO. 2: I wasn't aware of that. [¶] . . . [¶]

"THE COURT: Well, don't forget when I instructed the jury, I instructed the jury that they are not to consider the issue of punishment or penalty; that issue is solely for the court, depending upon many factors, not only the nature of the crime, but various other factors. So that's something you're not to be concerned with. [¶] I want to be satisfied that your vote for guilt as to count 2, the resisting arrest, if you will, or detention by Officer Macias; count 3, the same charge as to another officer; count 4, the attempted arson, if you will, that you were satisfied that based upon the evidence you heard, again, and the instructions on the law that I gave you, the arguments of the attorneys, you were satisfied that those charges have been proved beyond a reasonable doubt; is that correct?

"JUROR NO. 2: Yes."

The trial court then recorded the verdict. Appellant thereafter filed a petition for access to juror information pursuant to Code of Civil Procedure sections 206, subdivision (g) and 237. Appellant sought Juror No. 2's contact information for three reasons. First, "to ascertain what [her] deliberation process involved and why she stated to the court that she had 'reasonable doubt.' " Second, appellant's counsel asserted, "There is no way to contact any of the jurors impaneled" without access to juror information under seal. Third, "further investigation is needed for a motion for a new trial and can only be accomplished if an investigator from the defense is given information with which to contact the juror."

The trial court held a hearing regarding posttrial access to jury information, and concluded that appellant failed to make a prima facie showing of good cause to disclose juror information. The court reasoned that there was "no juror intimidation," Juror No. 2 was "satisfied the defendant was guilty beyond a reasonable doubt," and her hesitation only regarded the felony nature of the crime.

### b. *Summary of Law*

■ After a jury's verdict is recorded in a criminal jury proceeding, the court's record is "sealed," meaning all "personal juror identifying information of trial jurors . . . consisting of names, addresses, and telephone numbers," is extracted or otherwise removed from the court record. (Code Civ. Proc., § 237, subd. (a)(2)–(3).) Pursuant to Code of Civil Procedure section 206, subdivision (g), "a defendant or defendant's counsel may . . . petition the court for access to personal juror identifying information within the court's records necessary for the defendant to communicate with jurors for the purpose of developing a motion for new trial or any other lawful purpose." Code of Civil Procedure section 237, subdivision (b) further provides: "Any person may petition the court for access to these records. [¶] The petition shall be supported by a declaration that includes facts sufficient to establish good cause for the release of the juror's personal identifying information. The court shall set the matter for hearing if the petition and supporting declaration *establish a prima facie showing of good cause* for the release of the personal juror identifying information, but shall not set the matter for hearing if there is a showing on the record of facts that establish a compelling interest against disclosure. A compelling interest includes, but is not limited to, protecting jurors from threats or danger of physical harm. If the court does not set the matter for hearing, the court shall by minute order set forth the reasons and make express findings either of a lack of a prima facie showing of good cause or the presence of a compelling interest against disclosure." (Italics added.)

Before 1996, disclosure of juror information did not require good cause. Rather, the provision required that a court "shall" make the records available, *"in the absence of an express finding of continuing risk."* (Code Civ. Proc., former § 237, subd. (c), italics added; see generally *People v. Jefflo* (1998) 63 Cal.App.4th 1314, 1321, fn. 8 [74 Cal.Rptr.2d 622] (*Jefflo*), for a discussion of the changes in the statute.) The current statute makes it more difficult for defendants to obtain access to juror information, and we consider appellant's arguments in that light.

Appellant argues that *People v. Rhodes* (1989) 212 Cal.App.3d 541 [261 Cal.Rptr. 1] (*Rhodes*) sets forth the applicable test. Even though *Rhodes* was decided before the statute's present enactment requiring a showing of good cause, the *Rhodes* test survived the amendments. (See *Townsel v. Superior Court* (1999) 20 Cal.4th 1084, 1095 [86 Cal.Rptr.2d 602, 979 P.2d 963] (*Townsel*); *Jefflo, supra,* 63 Cal.App.4th at pp. 1316, 1321, fn. 8; *People v. Wilson* (1996) 43 Cal.App.4th 839, 852 [50 Cal.Rptr.2d 883].)

■ The *Rhodes* court "applied an express balancing test to conclude the trial court, in denying a defendant's request for disclosure of juror identifying information, did not abuse its inherent authority." (*Townsel, supra,* 20 Cal.4th at p. 1093.) In *Rhodes,* the defendant, following his conviction of voluntary manslaughter, filed a motion for a new trial on the grounds of jury misconduct. (*Rhodes, supra,* 212 Cal.App.3d at p. 546.) "[T]he *Rhodes* court discerned several policy-based reasons to deny the defendant's request for disclosure of juror identifying information. These reasons included protecting a juror's state constitutional right to privacy; the possible deterrence of prospective jurors from fulfilling their obligation to serve if they knew they would be subject to postverdict intrusions into their lives; reducing incentives for jury tampering; promoting free and open discussion among jurors in deliberations; and protecting the finality of verdicts." (*Townsel,* at p. 1093, citing *Rhodes,* at pp. 548–549.) The *Rhodes* court held that there was "an appropriate middle ground which can harmonize and satisfy [these] competing societal interests" by recognizing a rule that, "upon timely motion, counsel for a convicted defendant is entitled to the list of jurors who served in the case, including addresses and telephone numbers, if the defendant sets forth a sufficient showing to support a reasonable belief that jury misconduct occurred, that diligent efforts were made to contact the jurors through other means, and that further investigation is necessary to provide the court with adequate information to rule on a motion for new trial. . . . [¶] Absent a satisfactory, preliminary showing of possible juror misconduct, the strong public interests in the integrity of our jury system and a juror's right to privacy outweigh the countervailing public interest served by disclosure of the juror information . . . ." (*Rhodes, supra,* at pp. 551–552.)

c. *Application*

Denial of a petition filed pursuant to Code of Civil Procedure section 237 is reviewed under the deferential abuse of discretion standard. (See *Townsel, supra,* 20 Cal.4th at p. 1097; *People v. Santos* (2007) 147 Cal.App.4th 965, 978 [55 Cal.Rptr.3d 1].) Here, the trial court did not abuse its discretion in determining that appellant failed to make a prima facie showing of good cause. The court made an express finding that the juror's hesitation and "reasonable doubt" were based on her concern about the felony nature of the charged offenses and finality of the decision, and not the lack of proof. The record establishes that the trial court inquired about Juror No. 2's alleged misconduct and asked her why she returned a guilty verdict when it was not her intent. Juror No. 2 explained that she had reasonable doubt, which arose when the other jurors said the charge was a felony. The court explained that whether or not the charges were felonies was not an issue for her to consider. The court then said "based upon everything that you heard, all the evidence, and the instructions the court gave you on the law, the argument of the attorneys, you were satisfied the defendant was guilty beyond a reasonable doubt? Going that far?" and Juror No. 2 responded, "Yes." The court asked a second time, repeating each count charged, and the juror again responded in the affirmative. There was no showing of any misconduct. Based on the foregoing facts, the court found that "the defendant has not made a prima facie showing of good cause of disclosure of juror information."

What strikes us even more is that defense counsel learned about the claimed juror misconduct during the trial, before a verdict was entered, and had an opportunity to try to rectify any problem she perceived. Defense counsel could have proposed an additional line of inquiry to the trial court if she believed jury misconduct had occurred which the court was overlooking. She did not. We agree with respondent that, since the trial court questioned Juror No. 2 about whether she had been convinced of appellant's guilt beyond a reasonable doubt, there was no need for any postverdict questioning. Hence, there was no need for juror information to conduct such questioning after the court discharged the jury.[4]

---

[4] This case demonstrates both the importance of the juror polling procedure (§ 1163) and the difficulty faced by trial judges when the polling reveals something other than an unequivocal affirmation of the verdict. Section 1163, enacted in 1872, expressly tells a trial court what to do if an individual juror "answer[s] in the negative," when polled by the court: "the jury must be sent out for further deliberation." Here the juror's initial answers—no response, "yes," "no"—were certainly equivocal. This permitted the court to inquire further. When Juror No. 2 then stated, "I had reasonable doubt," better practice might have been to send the jury back to the jury room for further deliberations. Certainly the trial court had that power, and that course

### 4. *The Trial Court Did Not Err in Refusing to Dismiss Appellant's Previous Strike*

The trial court found that appellant's conviction in 2002 for assault with a deadly weapon upon a peace officer in violation of section 245, subdivision (c), was a serious and violent felony within the meaning of the "Three Strikes" law. At sentencing, appellant moved to dismiss his prior conviction.

Trial counsel argued that the court should dismiss appellant's prior strike conviction because he has "some significant mental health history and issues that have, for the most part, been undiagnosed and untreated." Counsel further argued that appellant was and is still suffering from the effects of long-term drug use. She acknowledged that although his mental condition did not rise to a defense that negated his specific intent, it had an effect on his mental state, his decisionmaking processes, and his ability to control his conduct and actions as he tried to cope with yet to be treated addiction and mental illness. Nonetheless, she conceded that given the similarities between the prior "strike" offense and the instant offense, it was unlikely that a court would be inclined to dismiss the prior strike conviction.

█ "[A] trial court's failure to dismiss or strike a prior serious and/or violent felony conviction allegation under [Penal Code] section 1385 should be reviewed for abuse of discretion." (*People v. Carmony* (2004) 33 Cal.4th

---

might have avoided what could have appeared to be "cross-examination" of the juror. Neither side, however, asked for further deliberations, either during the inquiry of Juror No. 2 or afterwards out of her presence, before the court accepted the verdict.

In supplemental letter briefing requested by this court, defendant argued that the trial court was required to order further deliberations at the time Juror No. 2 expressed past reasonable doubt. Considering the equivocal nature of the juror's statements up to that point, we cannot say that the trial court erred in asking additional questions. Ultimately, whether the jury's announced guilty verdict truly reflected Juror No. 2's individual verdict was a factual question that the trial judge was required to decide. "Where, as here, a juror makes equivocal or conflicting statements as to whether he has assented to the verdict freely and voluntarily, a direct question of fact within the determination of the trial judge is presented. The trial judge has the opportunity to observe the subtle factors of demeanor and tone of voice which mark the distinction between acquiescence and evasion of individual choice. The trial judge can determine whether returning the jury for further deliberation is likely to secure a real verdict, or whether the juror has really disagreed so that the verdict is not unanimous and not likely to become so." (*People v. Superior Court* (1967) 67 Cal.2d 929, 932 [64 Cal.Rptr. 327, 434 P.2d 623].)

The trial court's continued inquiry elicited information about whether other jurors had pressured No. 2—she said that they had not—and that Juror No. 2 was concerned that the offense was a felony, a factor that was legally irrelevant in light of the jury instruction to ignore penalty and punishment (CALCRIM No. 17.42). The trial judge then reminded the juror of that instruction and asked whether the prosecution had proved the charges beyond a reasonable doubt. Juror No. 2 answered, "Yes." Under these circumstances, the trial court properly accepted the juror's last answer. (See *People v. Burnett* (1962) 204 Cal.App.2d 453, 457 [22 Cal.Rptr. 320] [when juror's answers were equivocal, trial court properly accepted juror's final answer of concurrence in guilty verdict].)

367, 376 [14 Cal.Rptr.3d 880, 92 P.3d 369].) A trial court abuses its discretion when it dismisses a prior conviction solely to accommodate judicial convenience, due to court congestion, because a defendant pleads guilty, or conversely refuses to dismiss because of personal antipathy for the defendant while "ignoring 'defendant's background,' 'the nature of his present offenses,' and other 'individualized considerations.' " (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530–531 [53 Cal.Rptr.2d 789, 917 P.2d 628].) In determining whether to dismiss a prior felony conviction, the trial court must "consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 [69 Cal.Rptr.2d 917, 948 P.2d 429].)

Appellant contends that the trial court abused its discretion in denying his *Romero* motion because the court erroneously found it lacked authority to consider appellant's mental condition as a factor. He points to the following statement: "I don't think the cases authorize me to factor [appellant's] mental state, his mental condition, the reasons why he wanted to do these things."

We view the totality of the trial court's statement of reasons, not just one snippet. In deciding not to strike appellant's prior conviction, the trial court noted it had "to be dispassionate and objective and look at the criteria and standards under People v. Williams." The record reflects the trial court considered a wide range of appropriate factors in passing sentence, particularly the nature and circumstances of appellant's present and past convictions. First, the court noted that the convictions were close in time because appellant was imprisoned for his 2002 conviction and did not remain free from further imprisonment for at least five years after his release. Second, the nature of the prior conviction was a serious felony. Third, the complaint in the prior conviction originally alleged an attempted murder, although appellant pled guilty to a violation of section 245, subdivision (c). Fourth, the prior conviction involved section 69, the same type of offense at issue in the current case. Fifth, the court presided over the trial for which defendant was found guilty in the current case so it was familiar with the entire record. And finally, the trial court stated it did "take into consideration defendant's background, character and prospects which, in this court's opinion, are not great, based upon his history. [¶] And the court does take into consideration society's interest; that is, to protect society." Given the court's express consideration of appellant's background and character in ruling on the motion, that portion of its remarks quoted by appellant seems to us to be an

acknowledgement that the court could not give undue weight to an inherently speculative argument that defendant's mental state "made him do it." We find no abuse of discretion.

### 5. *This Case Must Be Remanded for a New Sentencing Hearing*

Appellant was convicted on counts 2 and 3 of resisting Deputy Macias and Detective McGuffin in violation of section 69, and on count 4 of attempted of arson. Appellant filed a sentencing memorandum arguing that counts 2, 3, and 4 should merge under section 654 because they were all part of the same act in that the prosecution's theory at trial was the "purpose and effect [of appellant's conduct in the station was] designed to undermine the authority of the Sheriffs involved, disrupt their course of business and perhaps do damage to himself and/or the building the Sheriffs were in." Furthermore, all of appellant's actions in the police station occurred "within a matter of minutes."

█ The trial court denied the motion because it did not see the three counts as one indivisible transaction, and stated that "[t]he law *requires* that I run counts 2 and 3, because it's a second strike case consecutive."[5] (Italics added.) "[W]here a sentencing court determines that two or more current felony convictions were either 'committed on the same occasion' or 'aris[e] from the same set of operative facts' . . . consecutive sentencing is not required under the three strikes law, but is permissible in the trial court's sound discretion." (*People v. Lawrence* (2000) 24 Cal.4th 219, 233 [99 Cal.Rptr.2d 570, 6 P.3d 228] (*Lawrence*).)

Appellant contends, the Attorney General concedes, and we agree the trial judge had the discretion to sentence appellant concurrently on counts 2 and 3, and the trial court erred when it stated it was required to impose consecutive sentences. The record is unclear whether, in denying appellant's section 654 motion, the court concluded that all three counts were separate incidents, or that counts 2 and 3 were separate from count 4 when the court stated, "I have different—two different officers which the jury found the

---

[5] "THE COURT: . . . [¶] . . . [¶] [Defense counsel] assert[s] that 654 would apply to all three counts, because of the fact the defendant's conduct constituted one individual—indivisible transaction. [¶] I look at it a little differently, but I'll let you argue it and hear from [the prosecutor]. I have different—two different officers which the jury found the defendant guilty of under PC 69, and that I have the act—independent act of attempting to burn the facility. [¶] I don't think 654 is a bar to the sentencing scheme as to those three counts, but if you want to argue it further, I'll certainly hear from you. . . . [¶] . . . [¶]

"[PROSECUTOR]: I agree with the court that these are separate incidents.

"THE COURT: I am satisfied—I could be wrong, but I'm satisfied that 654 does not apply to counts 2, 3 and 4. . . . [¶] The law *requires* that I run counts 2 and 3, because it's a second strike case consecutive." (Italics added.)

defendant guilty of under PC 69, and that I have the act—independent act of attempting to burn the facility." The more reasonable reading, however, seems to be that the court believed it lacked discretion to sentence appellant concurrently without deciding whether counts 2 and 3 were part of the "same occasion." A limited remand for resentencing is appropriate to allow the trial court to consider whether counts 2 and 3 were "committed on the 'same occasion' " or "aris[ing] from the 'same set of operative facts' " as set forth in *Lawrence, supra*, 24 Cal.4th at page 233, to enable the court to exercise its discretion in deciding whether to impose concurrent or consecutive sentences.

## DISPOSITION

The judgment is reversed and the matter is remanded for the limited purpose of permitting the court to exercise its discretion to impose sentences on counts 2 and 3 consecutively or concurrently. In all other respects, the judgment is affirmed.

Cooper, P. J., concurred.

**FLIER, J.,** Dissenting.—I respectfully dissent.

The operative effect of the trial court's denial of the request for juror information was to foreclose the defense from interviewing Juror No. 2. While the majority is correct in noting that defense counsel could have but did not suggest to the trial court additional lines of inquiry, I think that such a suggestion would have been an idle act; the trial court showed no inclination to allow the defense to question this juror. During the court's questioning, defense counsel asked if the defense would be "allowed to inquire at all" and the trial court said no, i.e., not at "this point in time." When the defense eventually did make clear that it wished to interview Juror No. 2, the denial of the request for juror information put an end to this endeavor. The trial court's ruling denying the request for juror information prevented the defense from ascertaining whether there was any factual basis to contend, in a motion for new trial, that this juror did not actually believe that appellant was guilty.

Given that the standard is whether the trial court abused its discretion, I think that it is a close question whether the request for juror information should have been granted. Two factors make this a close call. First, the event of a juror declaring after the rendition of the verdict that she has a reasonable doubt is so rare that it merits the closest scrutiny. Second, the defense did not handle this matter as well as it should have; the defense efforts on this issue were both too little and too late. Thus, the likelihood that appellant was convicted on a less than unanimous verdict is simply too great. I therefore

part company with the majority's conclusion that the trial court did not err in denying the request for juror information. On balance, I think the request should have been granted.

I am also concerned, however, with the issue that we asked the parties to brief, i.e., whether under Penal Code section 1163 the trial court should have sent the jury out for further deliberations once Juror No. 2 stated that she had a reasonable doubt.

"When a verdict is rendered, and before it is recorded, the jury may be polled, at the request of either party, in which case they must be severally asked whether it is their verdict, and if any one answer in the negative, the jury must be sent out for further deliberation." (Pen. Code, § 1163.) The question is just how many times a juror must answer "in the negative" before the jury is sent out for further deliberation.

Here, Juror No. 2 answered "in the negative" not once but three times in succession. First, when asked whether it was her "decision" to vote guilty on counts 2, 3 and 4, she stated no. Second, when asked whether she voted guilty because she felt compelled by the other jurors, she answered yes. Third, when asked what went on in the jury room that made her vote guilty when it was not her "desire and intent" to vote for a guilty verdict, she stated: "I had reasonable doubt."

Given that the foregoing is a rare occurrence, I think that at this point the juror had made it adequately clear that she did not intend to find defendant guilty. There is precedent for the proposition that, in order to invoke Penal Code section 1163 and to require the trial court to send the jury out for further deliberations, it is enough if the juror says once or twice that he or she did not vote for the verdict. (*People v Brancato* (1948) 83 Cal.App.2d 734, 743 [189 P.2d 504].)[1] While the trial court should ensure that the juror's response is clear and unambiguous, this does not mean that the juror's depth of conviction is to be explored under extended cross-examination by the trial judge.

[1] "The case was given the jury at 3:44 p.m. At 5:44 p.m. they reported that they were unable to agree and were again sent out. At 10:22 p.m. they returned and the foreman announced that they had agreed upon 'a verdict.' The court ordered 'the verdict' handed to the clerk. The clerk then read two verdicts, one finding Pedrotti guilty of robbery in the first degree and one finding Brancato guilty of robbery in the first degree. The clerk then asked 'Is that your verdict' and the jurors responded in the affirmative. The jury was then polled at the request of defense counsel. Each juror responded that this was his or her verdict with the exception of the eleventh juror, who replied: 'Please, I would rather not answer that question.' The court asked her what she had said and she replied: 'I don't like to answer that question.' The court then told the jury to retire for further deliberation." (*People v. Brancato, supra,* 83 Cal.App.2d at p. 743.) It is noteworthy that the juror's response in *Brancato* was far more equivocal than Juror No. 2's responses in this case.

Once the juror has made it clear that he or she did not intend to vote for the verdict, extended questioning by the trial court is likely to cause the juror to vacillate and even surrender his or her convictions in the face of the pressure created by the trial judge. In my opinion, this is what happened in this case. The trial court continued to ask the juror questions that suggested the answers and press home in his questioning that the juror was not to be concerned with the penalty. This put the juror on the defensive and shook her confidence in her views about this case. It is to be kept in mind that the juror was alone with the court and the lawyers, with everyone's attention focused on her, which in and of itself exerted pressure on this juror who was already in the throes of strong feelings over the verdict.

Nothing in Penal Code section 1163 authorizes the trial court to delve into the reasons why a juror has answered "in the negative" about a verdict. And while I believe that the trial court acted out of the best of motives, I think it is unrealistic to conclude anything other than the court did in fact exert pressure on this juror, however unintended this may have been.

The majority notes, and I agree, that it would have been better practice for the trial court to have sent the jury out for further deliberations once Juror No. 2 stated that she had a reasonable doubt. But the majority concludes that neither side asked for further deliberations on this issue and that, "given the defense's rather passive attitude," the trial court's questioning "adequately" showed that this juror intended to, and did, vote for guilt. In substance, the majority appears to conclude that if there was any error here, it was waived. Along the same lines, respondent contends in its letter brief on this issue that, since the matter of Penal Code section 1163 was not raised in the trial court, it has been waived for the purposes of this appeal.

There is no doubt that the best that can be said about defense counsel's position on this issue is that she expressed reservations about the trial court's ruling on Juror No. 2.[2] Defense counsel's observations simply do not amount to an objection based on Penal Code section 1163.

---

[2] "[Defense Counsel]: Just may the record reflect that in response to the court's last question and proposing to this juror that this is now her state or her position on these counts and verdicts, she still did hesitate. She did give the court ultimately a yes.

"I don't know—my concern is this: In the jury room, there had to be some reading of the forms and discussion of the fact that the charges were felonies. As she sat out here now, she indicates that she changed her position because she now learned they were felonies. We had always through the trial been discussing the felony counts. The court read the information.

"So not to disparage that juror at all, Your Honor, but I'm not quite sure—either perhaps she didn't understand the court, she was taking the court's suggestion, because it was definitely a helpful suggestion by the court, I'm sure it relieved a lot of stress, because it did come in the form of it's okay of that's okay [*sic*] the way you feel, but ultimately, Your Honor, her statement was I had reasonable doubt. That doesn't mean anything about felony, misdemeanor, infraction or any other type of crime."

It is, of course, basic that a defendant may not be convicted except on the vote of all 12 jurors. (*People v. Boyette* (2002) 29 Cal.4th 381, 436 [127 Cal.Rptr.2d 544, 58 P.3d 391].) "Unanimity obviously requires that each juror must vote for and acquiesce in the verdict. Acquiescence simply because the verdict has been reached by the majority is not an independent judgment, and if permitted, would undermine the right to a unanimous verdict." (*People v. Superior Court* (1967) 67 Cal.2d 929, 932 [64 Cal.Rptr. 327, 434 P.2d 623].) Under the California Constitution, appellant has a right to have his guilt or innocence determined by a unanimous verdict of 12 jurors. (Cal. Const., art. I, § 16; *People v. Collins* (1976) 17 Cal.3d 687, 692, fn. 3 [131 Cal.Rptr. 782, 552 P.2d 742].)[3] I think that there is a realistic probability that in this case there were not 12 votes to convict. If this is true, it means that appellant has been deprived of a right protected by the California Constitution.

If the introduction of an involuntary confession requires a reversal despite a defendant's failure to object to its introduction (*People v. Matteson* (1964) 61 Cal.2d 466, 469 [39 Cal.Rptr. 1, 393 P.2d 161]), it seems the same should be true when the verdict has not been unanimous. In both instances, the errors affect a fundamental, important, and constitutionally protected right that can be raised in a collateral attack on the judgment. Given this circumstance, the lack of an objection should not be dispositive.

I think this conclusion is supported by the circumstance that the error in this case was reversible error per se. Given the broad range of situations when the denial of the right to a jury has been held to be reversible error per se (see cases digested in 6 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Reversible Error, § 23, pp. 477–478),[4] there is every indication, in my opinion, that a less than unanimous verdict is reversible error per se.

The suggestion by the attorney general in its supplemental letter brief that, even if the court erred in failing to order further jury deliberation, appellant was not prejudiced is untenable. The very real possibility in this case that appellant was convicted on a less than unanimous verdict is, as I have noted, reversible error per se; on no account is it harmless.

---

[3] While in a federal criminal prosecution the verdict must be unanimous (*Johnson v. Louisiana* (1972) 406 U.S. 356, 363 [32 L.Ed.2d 152, 92 S.Ct. 1620]), the Sixth Amendment does not require unanimous verdicts in state criminal proceedings (*Apodaca v. Oregon* (1972) 406 U.S. 404, 411–412 [32 L.Ed.2d 184, 92 S.Ct. 1628]), except when the jury is composed of six members. (*Burch v. Louisiana* (1979) 441 U.S. 130, 138 [60 L.Ed.2d 96, 99 S.Ct. 1623].)

[4] These are ineffectual waivers of the right to a jury trial, discriminatory selection of the jury, departure from the statutory procedure in selecting the jury, failure to swear the jury, unlawful separation of the jury, permitting unauthorized contact with the jury, failure to reread incorrectly heard testimony and peremptory challenges on the basis of race. (6 Witkin & Epstein, Cal. Criminal Law, *supra*, Reversible Error, § 23, pp. 477–478.)

The jury in this case has long been discharged. It is also true that the lack of a unanimous verdict appears to be reversible error per se. Accordingly, the only remedy in this case is to reverse the judgment and to remand for a new trial.

A petition for a rehearing was denied July 2, 2008, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied September 24, 2008, S165273. Corrigan, J., did not participate therein.