Filed 9/25/15  P. v. McDonald CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROBERT FRANCIS McDONALD,<br><br>    Defendant and Appellant. | D066362<br><br><br><br>(Super. Ct. No. SCD251196) |

APPEAL from a judgment of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Junichi P. Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Robert Francis McDonald of possession of stolen property (Pen. Code,[1] § 496, subd. (a)) as a lesser related offense to a count 1 burglary, resisting an executive officer with force or violence (§ 69; count 2), possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a); count 3), and misdemeanor possession of burglary tools (§ 466; count 5).[2] While the jury was deliberating, McDonald admitted allegations that he had suffered three prior prison convictions (§§ 667.5, subd. (b), 668), eight probation denial prior convictions (§ 1203, subd. (e)(4)), one serious felony prior conviction (§§ 667, subd. (a), 668, 1192.7, subd. (c)), and one strike prior conviction (§§ 667, subds. (b)-(i), 668, 1170.12). In July 2014, the court sentenced McDonald to an eight-year prison term, consisting of an upper six-year term for the possession of stolen property offense, concurrent upper six-year terms each on counts 2 and 3, and a concurrent 180-day term on count 5. It added a consecutive two-year sentence for two of the three prison priors and struck the remaining prison and serious felony priors.

McDonald contends the evidence is insufficient to support his count 2 conviction for resisting an executive officer with force or violence. He further contends this court should reduce his convictions for possession of stolen property and possession of a controlled substance to misdemeanors under a retroactive application of Proposition 47

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

[2]     The jury also found McDonald guilty of resisting a peace officer as a lesser included offense to count 2. At McDonald's sentencing hearing, the court struck that finding.

and remand the matter for resentencing. We conclude sufficient evidence supports McDonald's count 2 conviction. As for Proposition 47, McDonald is limited to the statutory remedy of petitioning for recall of sentence in the trial court after his judgment is final. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In the morning of September 29, 2013, Jillian Schwantz was awakened in her South Mission Beach apartment by a rattling or cutting sound coming from her bedroom patio screen door, and saw a man in a black hooded sweatshirt grabbing her purse through a cut in the screen. Schwantz jumped out of bed and started to chase him, but realized she was not going to catch up and returned to her apartment to call 911. In Schwantz's purse was her wallet with identification, credit cards, a bottle of Ibuprofen and about $110 dollars.

Police were dispatched at about 6:30 a.m. Schwantz described the man as skinny and wearing a dark "hoodie." San Diego Police Officer Dante Romano was on patrol in Pacific Beach on Garnet Avenue that morning and heard the burglary call describing the suspect as a male in a dark hoodie and pants. At about 7:23 a.m., he saw a male in a hooded sweatshirt with a backpack riding a bicycle on the sidewalk. The bicycle had a surfboard attached to its side. Because it was a violation to ride a bicycle on the sidewalk in that area, Officer Romano pulled up, exited his patrol car and told the man, who he identified as McDonald, to stop. McDonald said, "Why" and kept riding. Officer Romano returned to his patrol car and attempted to stop McDonald again, but McDonald did not respond and peddled faster. The officer activated his lights and siren and called

3

for assistance. McDonald continued to ride away, building up speed and going different directions.

San Diego Police Sergeant Christopher Asbell was in uniform and in his patrol car supervising his squad of officers when he heard Officer Romano's broadcast. He travelled to the area, where he saw McDonald riding on the sidewalk and through parking lots. Sergeant Asbell turned on his lights and sirens to clear the area, and started coming at McDonald in a parking lot. Sergeant Asbell stopped his patrol car, exited, and started putting himself in McDonald's path with his hands up, yelling at McDonald to stop. McDonald was about 100 feet away, and nothing obstructed their view of each other. As Sergeant Asbell got in front of him, McDonald started to veer to his right, so the officer started jockeying to get in his way to force him to stop. McDonald looked at the officer and started pedaling harder. Sergeant Asbell kept jockeying to get in McDonald's path, but McDonald bore down and pedaled faster. Sergeant Asbell realized McDonald was not going to stop, and decided to try to knock him off the bicycle. He took a few running steps and tried to shoulder check and grab McDonald at the same time but the officer, who weighed only 165 pounds, received a "good hit"; he was spun around and flung to the ground on his right side. McDonald, who had more mass and speed behind him, kept going. The officer ran back to his patrol car and joined the chase behind Officer Romano, who had continued to pursue McDonald down an alley. Eventually Officer Romano tried to block McDonald with his patrol car; the officer exited the car, chased him, and was able to pull him off the bicycle and put him in handcuffs. Sergeant Asbell "tore up" his thumb, right forearm and elbow. He "landed and slammed on [his] hip,"

4

causing him to develop significant bruising on his right thigh and hip from his gun holster.

On searching McDonald's pockets, Officer Romano found several of Schwantz's credit cards and about $120 in cash. In McDonald's backpack, Officer Romano found a zippered pouch containing two clear baggies of what was later determined to be 2.58 grams of methamphetamine, a wallet with Schwantz's social security card, pliers, and two sets of bolt cutters.

At trial, Sergeant Asbell testified on cross-examination that when he put himself in McDonald's path and put his hands up, McDonald was trying to get away from him, veering to the right, and not straight at him. He agreed that at no point did McDonald ride straight at him on the bicycle. However, he also was asked whether he felt McDonald was trying to ride his bicycle directly at him to hurt him, and Sergeant Asbell responded: "I believe at that point when he started pedaling harder, his intent was to ride through me." Sergeant Asbell also testified that once Officer Romano had caught McDonald, he did not believe McDonald threw any punches or kicks.

## DISCUSSION

### I. *Claim of Insufficiency of the Evidence*

McDonald contends there is insufficient evidence to support his conviction for resisting an executive officer with force in violation of section 69, requiring reversal of his count 2 conviction. Specifically, pointing to Sergeant Asbell's testimony on cross-examination, McDonald maintains there is no evidence he used force while resisting or evading Sergeant Asbell; rather the evidence, particularly Sergeant Asbell's cross-

5

examination testimony, shows he tried to get away from the officer by maneuvering around him. In making these arguments, McDonald distinguishes *People v. Bernal* (2013) 222 Cal.App.4th 512 and *People v. Carrasco* (2008) 163 Cal.App.4th 978. He argues that since the People did not prove the element of force, at most he should have been convicted of the lesser included offense of resisting a peace officer.[3]

A. *Standard of Review*

In evaluating McDonald's claim, " 'we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a

---

[3] "Section 148, subdivision (a)(1) provides in part, '[e]very person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty' has committed a punishable offense." (*People v. Carrasco*, *supra*, 163 Cal.App.4th at p. 985.) "Because an accused cannot have resisted arrest forcefully without also having resisted arrest, . . . section 148, subdivision (a) is a lesser included offense to section 69's second prong." (*Ibid*.; see *People v. Smith* (2013) 57 Cal.4th 232, 236, 241-242.)

6

determination depends.  [Citation.]  We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  [Citation.]"  [Citation.]  A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' "  (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

B.  *Legal Principles*

Section 69 provides:  "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is punishable by [fine, imprisonment, or both]."  "The statute sets forth two separate ways in which an offense can be committed.  The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty."  (*In re Manuel G.* (1997) 16 Cal.4th 805, 814; accord, *People v. Smith*, *supra*, 57 Cal.4th at p. 240.)

A conviction under the second theory requires proof "the defendant resist[ed] the officer 'by the use of force or violence' " and "that the officer was acting lawfully at the time of the offense."  (*People v. Smith*, *supra*, 57 Cal.4th at p. 241; see CALCRIM No. 2652.)  Thus, in *People v. Carrasco*, *supra*, 163 Cal.App.4th 978, the defendant was convicted of resisting an executive officer by force or violence under section 69 when he resisted arrest after he approached a sheriff's station, engaged in an altercation with officers, and placed his hand in a duffle bag while opening the station door.  (*Id*. at pp.

7

981-982.) In attempting to arrest him, one officer grabbed the defendant's waist while the defendant tried to ride away on a bicycle, then the officer forced the defendant to the ground, where other officers attempted to control his arms. (*Id*. at p. 982.) The defendant "had to be physically taken to the ground . . . because he refused to comply with . . . repeated orders to relax and . . . to 'stop resisting' [and] continued to struggle with [the officers] . . . 'yelling, kicking [and] cussing,' and said he would 'kick [the officers'] ass[es].' " (*People v. Carrasco*, *supra*, 163 Cal.App.4th at pp. 985-986.) The defendant was eventually subdued with pepper spray. (*Id*. at p. 982.) In holding there was no need to instruct with the section 148, subdivision (a) lesser offense, the appellate court reasoned, "[I]f appellant resisted the officers at all, he did so forcefully, thereby ensuring no reasonable jury could have concluded he violated section 148, subdivision (a)(1), but not section 69." (*Id*. at p. 985.)

In *People v. Bernal*, *supra*, 222 Cal.App.4th 512, a panel of this court discussed *People v. Carrasco*, *supra*, 163 Cal.App.4th 978 and *People v. Martin* (2005) 133 Cal.App.4th 776 in addressing the type of force or violence required to support a conviction under section 69. This court held a violation of section 69 "need not involve any force or violence directed toward the person of an executive officer" but rather "force used by a defendant *in resisting* an officer's attempt to restrain and arrest the defendant is sufficient to support a conviction." (*People v. Bernal*, at p. 519.) In *Bernal*, two police officers approached the defendant and two others in an area subject to a gang injunction, and one officer attempted to handcuff the defendant after finding a weapon on him. (*Id*. at p. 515.) The officer was behind the defendant and as he attempted to put handcuffs on

8

him, the officer felt the defendant's hands push against him as the defendant attempted to begin running. (*Ibid.*) The officer grabbed the defendant by the waist with both hands, but the defendant began running and dragging the officer with him, jerking his hips in an effort to throw off the officer. (*Ibid.*) The defendant dragged the officer about eight to 10 yards before they both fell to the ground. (*Ibid.*) The officer suffered bruised and scraped knees. (*Id.* at p. 516.)

The defendant challenged the sufficiency of the evidence on grounds the People did not present evidence he used force or violence in his attempt to escape arrest, because he did not use force *against or on* the officer. (*People v. Bernal*, *supra*, 222 Cal.App.4th at p. 517.) We rejected the contention, observing that in *People v. Martin*, the appellate court agreed with the proposition that the section 69 offense was not "directed 'against the person' " and was " 'designed to protect police officers against violent interference with performance of their duties.' " (*Bernal*, at pp. 519-520, quoting *Martin*, *supra*, 133 Cal.App.4th at pp. 782-783.) " 'Whether the purpose of violence is to inflict harm on the officers or the harm is merely incidental to the goal of facilitating the perpetrator's escape, the consequence is the same; peace officers are subjected to violence and injury.' " (*Bernal*, at p. 520, quoting *Martin*, at p. 783.) Thus, this court in *Bernal* upheld the defendant's conviction, explaining that the defendant's "forceful attempt to escape from [the officer]" was enough; the defendant's conduct in swinging his hips in an attempt to free himself from the officer, then dragging the officer and causing him to fall "violently" to the ground, met the standard. (*Id.* at p. 520.)

9

C. *Analysis*

Applying the above principles, we conclude substantial evidence supports McDonald's conviction under section 69, which requires that the defendant "knowingly resist[]" an officer in the conduct of his lawful duties and in doing so, use force or violence. There is no issue as to whether McDonald knowingly resisted arrest, or whether Sergeant Asbell was performing his lawful duty at the time McDonald acted. As for the element of defendant's use of force or violence, section 69 does not require the defendant to resist aggressively or engage in any certain type of conduct, and it does not define the terms "force" or "violence." The only required force is that used by the defendant in resisting the officer from making an arrest, and as stated, the statute did not require McDonald to use force or violence directed *toward* Sergeant Asbell. (*People v. Bernal*, *supra*, 222 Cal.App.4th at pp. 517-520; *People v. Martin*, *supra*, 133 Cal.App.4th at p. 782.) McDonald repeatedly ignored Sergeant Asbell's commands to stop and instead tried to maneuver rapidly around him on a bicycle with an attached surfboard. He accelerated toward Sergeant Asbell while the officer attempted to get in McDonald's way to detain him, and then continued to bear down on the bicycle when the officer moved at him to stop him. In this way, McDonald engaged in a forceful and violent attempt to escape from the officer, resulting in Sergeant Asbell being "slammed" to the ground and injured.

We reject McDonald's emphasis on the evidence showing he was maneuvering around Sergeant Asbell to get away from him and Sergeant Asbell's testimony that McDonald never rode straight at him. McDonald asserts there was no force in his

10

resisting arrest, and poses a question, "How is pedaling one's bicycle at any speed to maneuver around an officer using force?" But the existence of evidence favorable to McDonald does not alter our conclusion. (*People v. Manibusan*, *supra*, 58 Cal.4th at p. 87.) Our focus is on the evidence supporting the jury's conviction. Regardless of McDonald's purported intent to avoid the officer, when McDonald proceeded to accelerate on a moving bicycle during Sergeant Asbell's attempt to stop or "check" him, he engaged in sufficiently forceful and violent conduct; his actions had a high potential for injury and indeed resulted in the officer's injuries. Aside from that, Sergeant Asbell testified that when he saw McDonald pedaling harder, he believed McDonald's "intent was to ride through me." The "jurors were entitled to accept or reject all of the testimony, or a portion of the testimony, of any of the . . . witnesses. [Citation.] They might have believed part of what the officers said and part of what the defense witnesses said." (*People v. Lacefield* (2007) 157 Cal.App.4th 249, 261, disapproved on another ground in *People v. Smith*, *supra*, 57 Cal.4th at p. 242.) The evidence viewed in the light most favorable to the judgment shows McDonald's actions support his conviction under section 69 in resisting Sergeant Asbell's efforts to arrest him.

## II. *Proposition 47*

The trial court sentenced McDonald in July 2014. In November 2014, the voters approved Proposition 47, the Safe Neighborhoods and Schools Act, which added section 1170.18. Effective November 5, 2014, Proposition 47 requires a misdemeanor sentence instead of a felony sentence for specified offenses. McDonald was convicted of possession of stolen property under section 496, subdivision (a) as a lesser related offense

11

to count 1. As amended by Proposition 47, section 496 mandates punishment "by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170," unless the value of the stolen property exceeds $950. (§ 496, subd. (a); *People v. Shabazz* (2015) 237 Cal.App.4th 303, 308-309.) In count 3, McDonald was convicted of possession of methamphetamine under Health and Safety Code section 11377, subdivision (a). Health and Safety Code section 11377, as amended by Proposition 47, mandates that such possession "shall be punished by imprisonment in a county jail for a period of not more than one year, except that such person may instead be punished pursuant to subdivision (h) of Section 1170 of the Penal Code if that person has one or more prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 of the Penal Code or for an offense requiring registration pursuant to subdivision (c) of Section 290 . . . ." Since the passage of Proposition 47, possession of methamphetamine is punishable as a misdemeanor unless the defendant has certain disqualifying prior convictions.

Proposition 47 also created section 1170.18, which provides a new statutory remedy for "[a] person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under [Proposition 47] had this act been in effect at the time of the offense." (§ 1170.18, subd. (a).) Under Penal Code section 1170.18, subdivision (a), such a person "may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing in accordance with Sections 11350, 11357, or 11377 of the Health and Safety Code, . . . as those sections have been amended or added by this

12

act."  Section 1170.18 provides that "[u]pon receiving a petition under subdivision (a), the court shall determine whether the petitioner satisfies the criteria in subdivision (a).  If the petitioner satisfies the criteria in subdivision (a), the petitioner's felony sentence shall be recalled and the petitioner resentenced to a misdemeanor . . . , unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."  (§ 1170.18, subd. (b).)[4]

McDonald contends that because his judgment is not yet final and the statute contains no savings clause, under *In re Estrada* (1965) 63 Cal.2d 740, Proposition 47 operates retroactively to require this court to give him the immediate benefit of its mitigated punishment by reducing his count 1 and 3 convictions to misdemeanors, and remanding for resentencing.  He maintains the voters intended retroactive application of Proposition 47 to nonfinal judgments, and that this result is compelled by the equal protection clause of the state and federal Constitutions.  We disagree.

Viewing section 1170.18 and giving its words their ordinary and usual meaning (see *People v. Park* (2013) 56 Cal.4th 782, 796), any defendant who is serving a sentence for a Proposition 47 qualifying offense when that initiative became effective, as is McDonald here, may petition for a recall of sentence so as to request resentencing.  The act unambiguously states the manner in which any adjustment in such a defendant's sentence is to be accomplished.  Accordingly, there is no issue presented in this case as to

_____

4      The section continues in part:  "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."  (§ 1170.18, subd. (c).)

13

retroactivity. Because McDonald is "[a] person currently serving a sentence for a conviction . . . of a felony or felonies who would have been guilty of a misdemeanor under the act" (§ 1170.18, subd. (a)), he benefits from Proposition 47 because he is permitted to exercise the statutory remedy of petitioning for recall of sentence in the trial court. (*People v. Noyan* (2014) 232 Cal.App.4th 657, 672; see *People v. DeHoyos* (2015) 238 Cal.App.4th 363, 368.)

However, a trial court does not have jurisdiction over a cause during the pendency of appeal as to anything that may affect the judgment. (*People v. Flores* (2003) 30 Cal.4th 1059, 1064; *In re Osslo* (1958) 51 Cal.2d 371, 379-380.) Thus, a petition for recall of sentence under Proposition 47 must be filed once the judgment is final and jurisdiction of the case has been returned to the trial court. In sum, McDonald is limited to the statutory remedy of petitioning the trial court for recall of sentence when his judgment is final.

## DISPOSITION

The judgment is affirmed.

O'ROURKE, Acting P. J.

WE CONCUR:

AARON, J.

IRION, J.