Filed 6/2/14  P. v. Jimenez CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B248955 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA402931) |
| v. | |
| ROGER ANTHONY JIMENEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig E. Veals, Judge.  Affirmed as modified.

Stanley Dale Radtke, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Defendant Roger Anthony Jimenez was charged by information with felony elder abuse (Pen. Code, § 368, subd. (b)(1)),[1] resisting an executive officer (§ 69), making criminal threats (§ 422), and with prior prison term and strike enhancements (§§ 667.5, subd. (b), 667, subds. (a)(1), (b)-(i)). Defendant was convicted by jury of the lesser included offense of misdemeanor elder abuse, and of felony resisting an executive officer, and was acquitted of the other offenses.

Defendant appeals his conviction of felony resisting an executive officer, contending the trial court committed instructional error when it failed to sua sponte instruct the jury on the lesser included offense of willfully resisting, delaying, or obstructing a peace officer in the discharge or attempt to discharge any duty under section 148, subdivision (a)(1). Defendant also contends, and respondent concedes, that he is owed additional custody credits.[2]

We find the trial court did not err by failing to instruct on the lesser included offense of section 148, subdivision (a)(1), because the evidence adduced at trial proved either the greater offense, or no offense, but there was no substantial evidence to support a conviction of the lesser offense. In any event, defendant was not prejudiced because no reasonable jury would have convicted him of the lesser offense even if they had received the instruction. We therefore affirm the judgment, as modified to include additional custody credits.

## FACTS

On September 23, 2012, defendant lived with his sister, Christine Jimenez, and their 80-year-old mother, Clara Jimenez. At that time, Clara was suffering from

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     Respondent argued on appeal that the trial court erroneously failed to state its reasons for striking two of defendant's prior prison term enhancements on the record. However, after the trial court issued a minute order stating its reasons, nunc pro tunc, respondent has withdrawn this argument. We grant defendant's request that we take judicial notice of the corrected minute order of the trial court.

Alzheimer's, and other health problems. At around 6:45 p.m., Christine was in her bedroom when she heard defendant "yelling obscenities" at their mother. When Christine approached defendant, he started yelling at her as well. He grabbed a package of raw chicken from the refrigerator, and threw the pieces of chicken at their mother's face. Christine testified that defendant threw the chicken "hard at her." Defendant then ran to the porch and grabbed a "bunch of clothes" that he also threw at their mother's face. Christine told defendant she was going to call the authorities, and went to her room to call 911. Defendant left the house.

Sheriff's deputies arrived within 15 or 20 minutes. The deputies interviewed Christine and Clara, and as they were preparing to search for defendant, he returned home. The deputies were on the porch, and told defendant to come outside. Defendant did not comply, and appeared angry. The deputies entered the home and asked defendant to put his hands behind his back, but he would not do so. "So they tried to put his . . . hands . . . behind his back and he resisted and they had to push him up against the console." When Christine testified that defendant "resisted," she explained that she meant defendant was yelling and struggling with the deputies. It took the deputies almost two minutes to get defendant's hands behind his back "because he kept fighting."

Once defendant was handcuffed, the two deputies walked him outside. Defendant was pulling back, and not complying with the deputies. Once they reached the sidewalk, defendant appeared to slip on some wet leaves and fell against a Volkswagen that was parked in front of the house, and hit his head on the concrete. The deputies picked him up and tried to get him into their vehicle, but defendant was still pushing back, and resisted getting into the car. He was also yelling obscenities at the deputies. When the deputies finally got him into the car, defendant yelled at Christine and at one of the deputies in the car.

In a previous incident, in June 2011, Christine had called 911 when defendant threw a television at their mother's feet, and threw a boiling pot of chicken outside after he threatened to throw it on Christine. When deputies arrived, defendant refused to come

3

out of the garage. The deputies tazed him when he eventually opened the door. Defendant threatened those deputies with a vodka bottle.

Los Angeles Sheriff's Deputy Michael Rodriguez testified that he and his partner, Deputy Juan Carlos Parra, responded on September 23 to a family disturbance call. They entered the home, and Deputy Parra approached defendant, who was "angry, upset [and] yelling obscenities" at the deputies. The deputies asked defendant to come outside to speak with them, but defendant did not comply. Defendant yelled, "F--- you. You don't belong here. Get out of here." When Deputy Parra again asked defendant to step outside, defendant again yelled at the deputies. Deputy Rodriguez stepped toward defendant, and tried to grab his right arm. Defendant "[i]mmediately tried to pull away from [him]." Deputy Rodriguez told defendant to relax and come outside, but defendant continued yelling obscenities. Deputy Rodriguez applied more pressure, and with Deputy Parra's help, was able to handcuff defendant. It took about 15 or 20 seconds to place defendant in handcuffs.

When the deputies tried to take defendant outside, "[h]e immediately tensed up and was not moving forward." He continued to yell obscenities. The deputies had to push defendant forward to get him out of the house. As they approached the outside gate area, defendant "trie[d] to stop us from moving forward." They had to "forcefully" move defendant because he would not voluntarily walk forward. As the three passed through the gate, defendant lunged forward, causing them all to fall into a parked car. After the deputies regained their footing, and resumed walking toward the patrol car, defendant slipped and fell to the sidewalk. The deputies picked defendant up, and at that point, he walked to the patrol car. Defendant was still cursing, but the deputies were able to secure him in the back of the patrol car.

Deputy Parra went to speak with Christine and Clara, while Deputy Rodriguez waited in the patrol car with defendant. Deputy Rodriguez was in the front passenger seat, and defendant was in the rear. Deputy Rodriguez checked the computer to see if defendant had any outstanding warrants. Defendant started yelling, calling Deputy Rodriguez a "f------ a------" and saying, repeatedly, "I am going kill you when I get out. I

4

will f------ get you." Defendant was "beyond upset"; he was "irate." He was yelling and screaming so forcefully that he was spitting on Deputy Rodriguez. Deputy Rodriguez believed defendant was serious when he made his threats. Deputy Rodriguez knew he would have to take defendant to jail, and eventually take off his handcuffs, which would give defendant an opportunity to attack him or his partner. Deputy Rodriguez takes threats, such as those made by defendant, seriously. He was concerned for his safety. Because of the threats defendant made, other deputies transported defendant to the station.

Deputy Parra also testified. Defendant was not present when he and Deputy Rodriguez arrived at the scene. After discussing the incident with Clara and Christine, Deputy Parra went to the patrol car to generate a report number, and retrieve a report memorandum. Christine approached the car, and pointed out defendant, who was walking back home. Deputies Parra and Rodriguez entered the home, and asked defendant to step outside. He refused, and cursed at the deputies. Defendant became aggressive, so Deputy Parra unholstered his tazer. Deputy Parra directed defendant to place his hands behind his back. When defendant did not comply, Deputy Rodriguez grabbed one of defendant's arms. Defendant then "attempt[ed] to pull his arm away from Deputy Rodriguez's grasp." Defendant "violently" resisted Deputy Rodriguez's attempts to handcuff him. He was "pulling himself away from Deputy Rodriguez, trying to break free of Deputy Rodriguez's grasp." Deputy Parra helped handcuff defendant, who continued to struggle against the deputies, and was "jerking" his body away from them. He kept "lunging his body forward and side to side." He continued to struggle as the deputies escorted defendant outside. Defendant slipped and fell on the pavement. As the deputies were helping him up, he yelled, "I'm going to get you. I will kill you, you mother------."

The deputies placed defendant in the car, and Deputy Parra did a search for wants and warrants. Defendant yelled at Deputy Rodriguez, with a "very menacing tone," that he was going to kill him. Deputy Parra believed that defendant may attempt to make good on his threat.

5

Fernando Sanchez Medina testified for the defense. Deputy Rodriguez had pulled him over while he was driving. Deputy Rodriguez told Medina he was pulled over for weaving in and out of traffic lanes. Medina accused Deputy Rodriguez of "profiling him," and Deputy Rodriguez became upset, and told Medina to get out of the vehicle. When Medina was out of his car, Deputy Rodriguez told him to turn around and put his hands behind his back. Medina complied, but Deputy Rodriguez twisted his right arm really hard, handcuffed him, and slammed him into the hood of Medina's car. He then walked Medina to the patrol car and searched him. Deputy Rodriguez placed Medina in the patrol car for 30 minutes, while Rodriguez laughed and joked with other deputies. Medina was ultimately given a ticket for having tinted windows and speeding, and was released after the Fire Department checked out his swollen hand. Medina filed a complaint against Rodriguez.

Defendant's friend and next door neighbor, Luis Vargas, also testified for the defense. He saw defendant being escorted to the patrol car by the deputies. The deputies "pushed" defendant into Vargas's daughter's Volkswagen, and then defendant fell to the ground. He did not hear defendant yell anything, and did not see him pulling away from the deputies. During cross-examination, Vargas admitted he did not see the deputies actually push defendant; he merely saw him fall into the car. Vargas also admitted his view of defendant and the deputies was obstructed by a fence. Defendant looked angry. After he fell, he seemed to say something to the deputies, although Vargas could not hear what was said.

Lillian Gomez, the sister of defendant and Christine, testified Christine used cocaine within the last two years. Gomez did not allow Christine near her home because of her drug use, and her lies. Christine "causes a lot of problems in [Gomez's] house." Christine is cruel to defendant because he is homosexual. There is also a rivalry between Christine and defendant, and Christine does not like him. She would often call the police on defendant for small things. Christine has also bragged that she will get the house when their mother dies, because "she has a power of attorney over everything." Once their mother died, Christine said she and her son would live in the home, and that

6

defendant would not be welcome there. Gomez has never heard defendant threaten Christine.

## DISCUSSION

### 1. Lesser Included Offense

Defendant was convicted of obstructing or resisting an executive officer in the performance of his duties in violation of section 69. This section punishes "[e]very person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty . . . ." Section 69 can be violated in two distinct ways. " 'The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty.' [Citations.] 'The two ways of violating section 69 have been called "attempting to deter" and "actually resisting an officer." ' [Citation.]" (*People v. Rasmussen* (2010) 189 Cal.App.4th 1411, 1417-1418; *People v. Carrasco* (2008) 163 Cal.App.4th 978, 984 (*Carrasco*).)

Defendant contends the trial court erred by failing to instruct the jury, sua sponte, on the lesser included offense of resisting, delaying, or obstructing a public officer in the discharge of his duties in violation of section 148, subdivision (a)(1). This section applies to "[e]very person who willfully resists, delays, or obstructs any public officer . . . in the discharge or attempt to discharge any duty of his or her office or employment . . . ." Unlike section 69, a violation of section 148, subdivision (a)(1) does not involve the use of force or violence. (*People v. Smith* (2013) 57 Cal.4th 232, 245 (*Smith*).)

The California Supreme Court recently addressed the issue whether section 148, subdivision (a)(1) is a lesser included offense of section 69 in *Smith*, *supra*, 57 Cal.4th 232. In that case, the defendant was charged with violating section 69, and the defendant requested an instruction on section 148, subdivision (a)(1) as a lesser included offense. The prosecution objected, and the trial court denied the defendant's request. (*Smith,* at p. 236.)

7

Our Supreme Court held that a trial court must give "instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.' [Citation.]" (*Smith*, *supra*, 57 Cal.4th at p. 239.) " '[A] trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support.' [Citation.]" (*Id.* at p. 240.)

A lesser offense is included in a greater offense, triggering the trial court's instructional duty, when either the statutory elements test or the accusatory pleading test has been satisfied. If the statutory elements, or the facts alleged in the accusatory pleading, include all of the elements of the lesser offense, such that the greater offense cannot be committed without committing the lesser offense, the trial court generally must instruct on the lesser offense. (*Smith*, *supra*, 57 Cal.4th at p. 240.)

The *Smith* court found that section 148, subdivision (a)(1) is not a lesser included offense of section 69 under the statutory elements test. (*Smith*, *supra*, 57 Cal.4th at p. 240.) "A person who violates section 69 in the second way—by 'knowingly resist[ing], by the use of force or violence, such officer, in the performance of his duty'— also necessarily violates section 148(a)(1) by 'willfully resist[ing] any public officer . . . in the discharge or attempt to discharge any duty of his or her office or employment.' [Citation.] But it is possible to violate section 69 in the first way—by attempting, through threat or violence, to deter or prevent an executive officer from performing a duty—without also violating section 148(a)(1). A person who threatens an executive officer in an attempt to deter the officer from performing a duty 'at some time *in the future*' [citation] does not necessarily willfully resist that officer in the discharge or attempt to discharge his or her duty under section 148(a)(1). Accordingly, section 148(a)(1) is not a lesser included offense of section 69 based on the statutory elements of each offense. [Citations.]" (*Id.* at pp. 241-242.)

Under the accusatory pleading test, the Supreme Court noted that "the amended information charged defendant with both ways of violating section 69. In addition to the first way of violating the statute, the accusatory pleading also alleged that defendant violated the statute in the second way by 'knowingly resist[ing], by the use of force or violence, such officer, in the performance of his duty.' As explained above, section 148(a)(1) is necessarily included within this second way of violating section 69." (*Smith*, *supra*, 57 Cal.4th at p. 242.) Thus, "section148(a)(1) was a necessarily included lesser offense of section 69 as alleged in the . . . information." (*Id*. at p. 243.)

The *Smith* court concluded that "[t]he trial court need only examine the accusatory pleading. When the prosecution chooses to allege multiple ways of committing a greater offense in the accusatory pleading, the defendant may be convicted of the greater offense on any theory alleged [citation], including a theory that necessarily subsumes a lesser offense. The prosecution may, of course, choose to file an accusatory pleading that does not allege the commission of a greater offense in a way that necessarily subsumes a lesser offense. But so long as the prosecution has chosen to allege a way of committing the greater offense that necessarily subsumes a lesser offense, and so long as there is substantial evidence that the defendant committed the lesser offense without also committing the greater, the trial court must instruct on the lesser included offense." (*Smith*, *supra*, 57 Cal.4th at p. 244.)

Here, the prosecution alleged both ways of violating section 69 in the information, which charged that defendant "did unlawfully attempt by means of threats and violence to deter and prevent M. RODRIGUEZ, who was then and there an executive officer, from performing a duty imposed upon such officer by law, and did knowingly resist by the use of force and violence said executive officer in the performance of his/her duty." Therefore, under *Smith* the trial court would have had a duty to instruct the jury on the elements of a violation of section 148, subdivision (a)(1), if there was substantial evidence that defendant committed the lesser offense without also committing the greater offense of "knowingly resist[ing], by the use of force or violence, such officer, in the

9

performance of his duty . . . ." (§ 69; see also *Smith*, *supra*, 57 Cal.4th at pp. 239-240, 245.)**3**

We conclude, however, that the evidence in this case did not support a section 148, subdivision (a)(1) instruction. The undisputed evidence was that defendant struggled and fought with the deputies while yelling at and cursing them, violently twisting and jerking his body as the deputies tried to handcuff him. After he was handcuffed, he tensed his body to resist the deputies' efforts to escort him to the patrol car, and lunged and pulled against them with enough force to knock both deputies off their feet and cause them to fall with him against a parked car. When he was secure in the patrol car, defendant continued to yell at Deputy Rodriguez with so much force that he spit on the deputy, and he threatened to kill Deputy Rodriguez. This case is like *Carrasco*, *supra*, 163 Cal.App.4th 978, where the defendant "had to be physically taken to the ground . . . because he refused to comply with . . . repeated orders to relax . . . and to 'stop resisting' [and] continued to struggle with [the officers] yelling, kicking [and] cussing . . . and said he would 'kick [the officers'] ass[es].' " (*Id.* at pp. 985-986.) Here, like in *Carrasco*, "if [defendant] resisted the officers at all, he did so forcefully, thereby ensuring no reasonable jury could have concluded he violated section 148[(a)(1)] but not section 69." (*Id.* at p. 985.)

Even if the instruction had been warranted, the failure to give it was not prejudicial. (*People v. Moye* (2009) 47 Cal.4th 537, 555-556 [failure to instruct on a lesser included crime is prejudicial only if it is reasonably probable a defendant would have obtained a more favorable result absent the error].) No reasonable jury could have

_____

**3** Respondent contends the information was informally amended to allege only the first way of violating the statute by "unlawfully attempt[ing] by means of threats and violence to deter and prevent M. RODRIGUEZ" because the prosecutor only advanced this theory during closing arguments, and because the jury was instructed only as to this manner of violating section 69, of which section 148, subdivision (a)(1) is not a lesser included offense. We are not persuaded, both because we find nothing in the record indicating that the prosecutor explicitly abandoned the second theory that was alleged in the information, and respondent has not cited any persuasive authority for the "informal amendment" argument.

convicted defendant of only the lesser offense of resisting but not the greater of offense of using force or violence to resist the officers. As discussed, *ante*, there was considerable evidence that defendant forcefully resisted the deputies' lawful orders, and no countervailing evidence that he resisted the deputies without force or violence. Even if the jury credited Vargas's testimony, that defendant was not twisting or fighting as the deputies walked him out of the house, it does not compel a different result. Vargas did not testify to what happened in the house, and testified that his view of defendant and the deputies was obstructed by a fence.

Moreover, the prosecutor did not argue that the jury should convict defendant of resisting with force or violence, but instead argued the evidence showed defendant attempted to deter the deputies by making threats, rather than actually resisting by force or violence. The prosecutor did not ask the court to instruct on the second way of violating section 69, with force or violence, and the court only instructed the jury that defendant could be convicted if the People proved: "A person willfully and unlawfully attempted to deter or prevent an executive officer from performing any duty imposed upon that officer by law; and . . . [¶] . . . That person specifically intended to deter or prevent an executive officer from performing a duty imposed upon that officer by law; and . . . . [¶] . . . The attempt was accomplished by means of any threat or violence." Therefore, it is not reasonably probable that defendant would have obtained a more favorable result had the jury been instructed under section 148, subdivision (a)(1).

### 2. Custody Credits

Defendant contends, and respondent concedes, that he is entitled to additional custody credits under section 4019. At the time defendant committed his crimes and was sentenced, the law provided for conduct credit on a "day-for-day" basis. (See § 4019; *People v. Hul* (2013) 213 Cal.App.4th 182, 186-187.) Defendant received 233 days credit for actual time, and only 116 days conduct credit. He should receive a total of 466 days credit, consisting of 233 actual days, and 233 days of conduct credit.

## DISPOSITION

The judgment is affirmed, as modified. The superior court is directed to correct the judgment to reflect 233 days of actual custody and 233 days of local conduct credit for a total of 466 days of presentence custody credits. The superior court is ordered to prepare and forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


GRIMES, J.


We concur:


BIGELOW, P. J.


RUBIN, J.