Filed 4/28/15  P. v. Wagner CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061166 |
| v. | (Super.Ct.No. RIF1303259) |
| EARL WILLIAM WAGNER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Irma Poole Ashberry, Judge.  Affirmed with directions.

Steven J. Carroll, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant, Earl Wagner, of two counts of first degree residential burglary (Pen. Code, § 459),[1] during which a non-accomplice was present (§ 667.5, subd. (c)(21)), and two counts of receiving stolen property (§ 496, subd. (a)). In bifurcated proceedings, he admitted suffering five prior convictions, for which he served prison terms (§ 667.5, subd. (b)), one serious prior conviction (§ 667, subd. (a)) and one strike prior (§ 667, subds. (c) & (e)(1)). He was sentenced to prison for 15 years, eight months, and appeals, claiming error occurred in: (1) defense counsel conceding defendant's guilt of the charged receiving stolen property offenses, (2) denial of defendant's motion to acquit as to one of the charged burglaries, (3) denial of defendant's motion to disclose juror identifying information and, (4) imposition of a restitution fine. We reject his contentions and affirm, while directing the trial court to correct errors in the court minutes and abstract of judgment.

## FACTS

The male renter of a Riverside apartment testified that at 9:45 p.m. on May 24, 2013, he left his apartment to walk his dog, leaving the front door open, but the security screen door closed. He returned 15-20 minutes later and noticed the screen door was ajar and his wallet, containing identification and an ATM card, and his live-in girlfriend's cell phone were missing. His live-in girlfriend testified that while her boyfriend was out walking the dog, she was inside the one-bedroom apartment's bathroom, with the bathroom door open, putting on makeup. Three to five minutes after her boyfriend had

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

left with the dog, she heard a noise, looked outside the bathroom but saw no one, noticed that the screen door was ajar and closed the front door. Her cell phone had last been on the coffee table in the living room, near the front door.

At 9:40 or 9:50 the same night, defendant entered a sober living house across the street and one door down from the afore-mentioned apartment. He went into the bathroom and closed the door. When two occupants of the house tried to confront him, he escaped through another door in the bathroom and went out the back door of the house and over the backyard fence, as will be described in greater detail later in this opinion.

A police officer testified that around 10:05 that night, he saw defendant, who matched the description of the person who had entered the sober living house, in the driveway of a house that backed up to the back yard of the sober living house. Defendant's knees were bent, as though he had just jumped the fence that surrounded the sober living house's back yard. Defendant disappeared, so the officer knocked on the door to the house where he had seen defendant in the driveway and after several knocks, defendant came to the door. Defendant said he was there visiting his friend, "Eric," but he could not supply "Eric's" last name nor the address where he was.

Defendant was convicted of the charged receiving stolen property counts, which were the wallet and the cell phone taken from the apartment. The jury acquitted defendant of burglarizing the house when defendant was seen by the officer in the driveway.

1. *Defendant's Concession*

On December 2, 2013, the People requested that the standard instruction on a defendant's right not to testify be given at the end of trial. On December 3, during opening statement, defense counsel said, "[M]istakes were made and crimes were committed in this case and . . . you shouldn't let anybody slide by on that. The evidence will show that [defendant] did possess stolen property, the wallet and the cell phone, and you should hold him accountable for those crimes. [¶] . . . [T]he evidence will show you that [defendant] did not enter anyone's home that night with the intent to steal. [¶] . . . Hold [defendant] accountable for what he did, no more and no less." During discussion of jury instructions on December 4, the trial court noted that the People had requested the instruction on a defendant's right not to testify, as well as defense counsel's lack of objection to it. The court added, however, that during a discussion of the instructions the day before, off the record, it and counsel "indicate[d], based on . . . what counsel felt might come out with some of the evidence, that we would need to revisit . . . [the jury instruction on a defendant's right not to testify] after evidence was completed . . . . Obviously, if [defendant] testifies, that will be pulled."

Later that day, defendant took the stand. He admitted that he had been convicted in the past of numerous felonies, including burglary and stealing cars on three different occasions. He said that on May 24, 2013, he had just picked up some methamphetamine, which he planned to inject, and was riding his bike back to his campsite, when he noticed things that were being thrown away in a dumpster near an apartment on the same street as

the apartment that was burglarized. He looked through the items and found a box containing the male apartment renter's wallet and the female apartment renter's pink cell phone. He looked inside the wallet and saw that there was no money in it, but there were identification and credit cards. He wanted to see if the cell phone was working, so he pushed the power button and it turned on. When asked if he took the wallet and cell phone with him, he said, "I figured that I could sell it . . . ." He acknowledged that neither was his. When asked about the arresting officer's testimony that defendant told him that the cell phone belonged to the mother of his child, defendant said that he had two cell phones in his possession when detained by the officer, one of which was a black touch screen he had borrowed from his girlfriend. When asked if he was testifying that when the officer asked him about the pink cell phone, and defendant told the officer that it belonged to his child's mother, he was actually referring to the black touch-screen, defendant said he did not know because he was so under the influence that he did not remember. Upon further questioning, he admitted lying to the officer about the pink cell phone. He said he went behind the trash can that contained the discarded items and injected the methamphetamine, at which time, things became fuzzy and he was unable to recall what became of his bicycle. He remembered banging on a door, opening the door, then awaking in an unfamiliar bed, in the house where he was accosted by the arresting officer. He remembered walking into the house through an unlocked door, telling the officer he was there to visit an "Eric," but no Eric lived there. He also remembered being at the side of a house, a female who was lying down reading a book yelling out the window at him to get out of there and him getting scared and running, then hiding behind

5

a bush, but he did not recall being inside a house, other than the one in which he had fallen asleep. He denied being in a back yard or remembering a swimming pool or a chain link fence, both of which were features at the sober living house. He denied going into anyone's house intending to steal things. On rebuttal, the arresting officer testified that defendant exhibited no signs of intoxication and defendant had only one cell phone on his person and it was the pink one.

During argument to the jury, defense counsel said, "[Defendant] did possess th[e] stolen property [as charged], and he told you . . . how he knew it didn't belong, obviously, to him. He knew that it belonged to someone. The cell phone worked. The wallet had somebody's name and address in it. He intended to keep it. He intended to sell it. You should find him guilty of those [crimes]. [¶] . . . [¶] I don't know how much clearer I can be when I say he did that and you should convict him. . . . I'm asking you to return guilty verdicts there." However, counsel went on to argue that there was reasonable doubt that defendant was guilty of the three charged burglaries. As to the burglary of the apartment, she argued that if as the male apartment renter told the police, he had $10 in his wallet, and if as the arresting officer testified, when defendant was apprehended he had no money on him, then defendant's claim that he found the wallet in the box in the dumpster and the inference that someone else took it from the apartment, took the money out of it and left it in the box were both true. As to the burglary of the sober living house, counsel conceded that defendant ran through the house, as its two occupants had testified. However, counsel argued that defendant was merely trying to

6

flee the scene[2] and had no intent to take anything when he ran into the bathroom, then out the back door and over the fence. Counsel also conceded that defendant had gone into the house where he was apprehended by the arresting officer. However, counsel argued that defendant went into this house after seeing the officer because defendant knew he had stolen property in his possession and was attempting to hide from the officer, not to steal anything in the house. Alternatively, counsel argued that because defendant was under the influence, he did not form the specific intent to commit theft while at the sober living house and at the house where he was apprehended by the arresting officer. In so arguing, counsel conceded that there was no such specific intent necessary for the charged offenses of possessing stolen property, so defendant's claim of intoxication could not be used to escape liability for them, even aside from defendant's concession of guilt as to them.

The jury was instructed as to the possession of stolen property charges and they returned verdicts of guilty.

Defendant here contends that the trial court should not have allowed counsel below to concede that he was guilty of the possession counts without first assuring itself

---

[2] Counsel said, "[Defendant] was fleeing the scene of the first house through the house", which, of course, makes no sense. Later, counsel said that defendant ran through the sober living house because "he was trying to get away." Because defendant argued that he did not burglarize the apartment—that someone else did—counsel could not possibly have been implying that defendant was trying to get away from the scene of the apartment burglary. The only logical implication left is that defendant knew he possessed stolen property and was trying to get away from the police if they happened upon him.

7

that defendant wanted to concede his guilt and without going through the same litany of advisements and waivers required for defendants who plead guilty.  We disagree.

Counsel first conceded defendant's guilt of the possession charges during opening statement, at a time when the record established that she was not aware whether defendant would testify.  Therefore, contrary to defendant's implication, the record does not support that counsel knew, when she first made this concession, that it would conflict with the opinion expressed by defendant during his later testimony that the cell phone and wallet had been abandoned.  Second, defendant ignores the context of his own testimony.  As the prosecutor pointed out twice to defendant during her cross-examination of him, defendant's credibility was crucial.  It is obvious defendant was doing his best on the stand to paint the rosiest picture of his actions.  This included his claim that he believed that the wallet and cell phone had been abandoned.  However, defense counsel ultimately recognized the reality of the situation, which is that no owner willingly abandons a working cell phone or a wallet full of credit cards.  This means that when defendant found the items, despite his claim of opining that they had been abandoned, he knew that they belonged to other people (a matter he conceded on the stand)[3] and his obligation was either to walk away from them or to call the police and report that he had found them so they could be returned to their rightful owners.  It was not, as defendant conceded he had done, to take them upon forming the intent to sell them, thus depriving their rightful owners of them.  In this regard, we do not view defendant's testimony as conflicting with

---

[3] Therefore, the fact that no one asked him, and he did not volunteer, that he knew they were stolen is inconsequential.

his attorney's concession.  Finally, as is clear from reading *all* of counsel's argument to the jury, admitting that defendant possessed stolen property was crucial to defendant's claim that he had entered the sober living house as a means of fleeing the scene and the house in which he was apprehended by the arresting officer as a means of hiding from the police because he knew he was in possession of stolen property.  Without conceding that he was in possession of stolen property, defendant had no reason for going into either house, other than to commit theft therein.  Comparing the punishment and further consequences of convictions for first degree residential burglary with the sentence and further consequences of convictions for possessing stolen property, defense counsel's tactical decision makes perfect sense.  Therefore, we cannot agree with defendant that his attorney acted incompetently in making this concession.

As to defendant's contention that his counsel's concession was tantamount to a guilty plea, requiring both express agreement by the defendant and the guilty plea litany of advisements and waivers, the People correctly point out that the California Supreme Court has held otherwise.  (*People v. Cain* (1995) 10 Cal 4th 1, 30.)  As to the former, defendant was present when his counsel made her concessions during her opening statement and closing argument.  He said nothing on either occasion, and did not, after trial, make a motion for a new trial or a *Marsden*[4] motion.  Thus, we agree with the People that the trial court had no duty to inquire of defendant whether he agreed with her concession.  We do not agree with defendant that what he deems to be the conflict

---

[4]  *People v. Marsden* (1970) 2 Cal.3d 118.

between his trial testimony and the concession was an indication that he disagreed with his counsel's tactical decision. As we have already concluded, there was no such conflict and the concession supported counsel's tactical decision to fight the more harshly punishable charges.

2. *Defendant's Motion for Acquittal*

At the end of the People's case-in-chief, defendant moved for acquittal as to all the charges. The trial court denied it, finding there was "substantial evidence that would allow a reasonable finder of fact to find every element of the charged offense[s] had been proved beyond a reasonable doubt." Defendant here contends that the trial court erred in denying his motion as to the burglary of the sober living house. We disagree.

One of the occupants of the sober living house testified that she was on the computer in the living room of the house at 9:50 p.m. on May 24, 2013 when, alerted by a bell that rings when someone enters through the front door, she looked to see defendant entering the home through the closed but unlocked door. Defendant walked past her and into the bathroom, where he locked himself in, despite her walking behind him and saying, "Excuse me, hello." Once he was in the bathroom, she spoke to him through the locked door, but he did not respond to her. She checked the rear door to the bathroom, which let out through the pantry, to see if defendant had exited through it, and she knocked on it, but there was no answer. There were items that had been piled up against the pantry side of that door. She went and got her housemate and when she returned to the rear bathroom door, the items that had been piled up against it had been moved and it appeared as though defendant had come out through that door, then left the house through

10

the back door. The back door leads to the pool area in the back yard. Defendant had been in the bathroom for 5-10 minutes.

The occupant's housemate testified that she was on the bed in her bedroom, which is next to the front door, watching television when defendant ran through the house at 9:40 or 9:50 p.m. and locked himself in the bathroom for less than one minute. When she got to the rear door of the bathroom with the occupant, it was open and she assumed that defendant had run out through it and out the back door. She heard the chain link fence that separated her back yard from the neighbor's shaking, as though someone was climbing it to jump into the neighbor's yard. When defendant entered the house, all the lights were off—the only light came from the occupant's computer screen and her television.

A detective testified that in April 1999, on the same street that the house where defendant was apprehended by the arresting officer occurred, a house was entered through an open rear door and a forced open window on an interior door. Two phones, a VCR, money and firearms were stolen. Another detective testified that eight days later, defendant was stopped while driving a car in Riverside that belonged to the daughter of the victim of the above-described burglary. Defendant claimed that the car belonged to his girlfriend, who had a different last name than that of the car's owner. Upon further questioning, defendant said that he had met a man named Jose on the street at 10:00 p.m. and Jose had asked defendant if defendant wanted the keys to a car, which Jose had taken from a garage down the street. Defendant took the keys from Jose, walked down the street and took the car. Defendant reached the conclusion that the car had been stolen.

11

The jury was instructed that it could consider this evidence in deciding whether defendant entered the apartment, the sober living home and the home where he was apprehended by the arresting officer with the specific intent to commit theft and that he did not enter any of those due to a mistake or by accident.

Based on the evidence of defendant's 1999 burglary and his burglary of the apartment, during both of which defendant stole items, the jury could reasonably infer that defendant entered the sober living house, which he did moments after burglarizing the apartment, with the intent to steal items, which plan was thwarted by the fact that the house was dark and defendant could not see things to take them, or that he entered the darkened house assuming there was no one inside and was surprised to find the occupant and her housemate there. Still, a third possibility was that defendant was "thrown off" his plan to take items inside the house by the bell that sounded when he walked through the front door. While defendant postulates a scenario based on the testimony of the occupant of the house in which he was apprehended by the arresting officer that she "th[ought] she saw [defendant] on [a] street [different from the street on which the sober house was located, but nearby] once before that maybe[,]"and he entered the sober house to use the bathroom, this scenario is a great deal less likely than the three this court has set forth above. After all, if you are just using someone's bathroom, why would you fail to respond to them when they are trying to find out why you are in their house? And why would you then climb over a chain link fence and hide in yet another house in order to get away? Both of these things suggest that defendant was up to no good, not that he somehow thought he was entitled to use the bathroom at the sober living house because

12

he somehow knew it was a sober living house and believed that gave him carte blanche in the bathroom. Equally unlikely is another of what defendant asserts is a reasonable inference that he entered the house to go into the bathroom to inject methamphetamine. What rational person would assume that they could use a stranger's house as a place to engage in illegal behavior unfettered? Moreover, it directly contradicts defendant's own testimony that he injected methamphetamine behind the dumpster where he found the wallet and cell phone. While we recognize that the trial court did not have the advantage of this testimony when it denied the motion to acquit, granting it on this basis would have put defendant in a difficult position in terms of his testimony.

3. *Disclosure of Juror Information*

Although we have already mentioned this in connection with the first issue raised by defendant, we repeat what we had previously stated, thusly, "As to the burglary of the sober living house, [defense] counsel conceded [during argument to the jury] that defendant ran through the house, as its two occupants had testified. However, counsel argued that defendant was merely trying to flee the scene and had no intent to take anything when he ran into the bathroom, then out the back door and over the fence." In footnote number two, we continued, "[Defense c]ounsel said, '[Defendant] was fleeing the scene of the first house through the house,' which, of course, makes no sense. Later, counsel said that defendant ran through the sober living house because 'he was trying to get away.' Because defendant argued that he did not burglarize the apartment—that the person who discarded the wallet and cell phone where defendant found them did— counsel could not possibly have been implying that defendant was trying to get away

13

from the scene of the apartment burglary. The only logical implication left is that defendant knew he possessed stolen property [(i.e., the wallet and the cell phone)] and was trying to get away from the police if they happened upon him." We continued in the opinion, "[Defense c]ounsel also conceded that defendant had gone into the house where he was apprehended by the arresting officer. However, counsel argued that defendant went into this house after seeing the officer because defendant knew he had stolen property in his possession and was attempting to hide from the officer, not to steal anything in the house."

Based on defense counsel's argument that defendant was "fleeing the scene" when he entered the sober living house, post trial, defendant moved for disclosure of juror information based on a declaration by trial counsel for defendant in which she said the following, "[T]he foreman . . . told me that he and other jurors had 'caught my mistake.' . . . [H]e explained that because I had said in closing that, even if the jury felt [that defendant] was guilty of the . . . residential burglary [of the apartment], it was clear that he was simply fleeing the scene at the [sober living house] and was hiding inside the . . . house [where he was later apprehended by the arresting officer], I had admitted his guilt and that is why they convicted him of burglary at the s[ober living] house. I asked if he remembered the Judge saying that the arguments were not evidence. He replied[,] '[Y]es, but we caught you.'" Of course, these statements make no sense. Although as we point out, defense counsel was not clear below about to what she was referring when she said that defendant was "fleeing the scene" when he entered the sober living house, she was very clear that when defendant entered the house where he was

14

later apprehended by the arresting officer, he was trying to avoid the police because he knew he had stolen property on him. The only truly logical implication, as we have already said, to counsel's clear argument that defendant was not guilty of burglarizing the sober living house was that defendant entered it to escape detection for having in his possession the wallet and cell phone taken in the burglary of the apartment, but counsel was equally clear that defendant was not guilty of committing that burglary, either.

Appellate counsel for defendant interprets the foreperson's remarks as follows, "[Defense] counsel stated in her argument that even if the jury believed that [defendant] was guilty of [the burglary of the apartment], it was clear that as to [the burglary of the sober living house, defendant] was simply fleeing the scene at the [sober living house] and was hiding inside the . . . house [where he was later apprehended by the arresting officer]." Of course, accepting this interpretation renders defendant's request unmeritorious. If, as defendant asserts, defense counsel conceded defendant's guilt of the burglary of the apartment (which we have pointed out defense counsel clearly did *not* do) then, defendant's guilt of the burglary of the sober living house was not "admitted" or "conceded" by counsel's remarks, as she was merely saying that he entered the sober house to flee the scene of the apartment burglary, not to steal anything in the sober living house.

In their opposition to defendant's motion, the prosecutor recalled the foreperson's remarks differently. She said, "[The foreman] pointed out to [defense counsel] that in her closing argument she said the defendant was guilty. [Defense counsel] pointed out to the juror that anything the attorneys say is not evidence. The [foreman] agreed and indicated

15

he understood this jury instruction, but just wanted to let [defense counsel] know what she said during her closing argument. [The prosecutor] does not recall the [foreman] making any statement that the reason the jury convicted defendant of [the burglary of the sober living house] was because of [defense counsel's] statement regarding [the burglary of the apartment] thereby inferring guilt as to [the former], but rather that it was something the juror noticed and wanted to point out to [defense counsel] in his discussion about his vote as to [the burglary of the sober living house] . . . ." The People asserted that defendant's motion was based on speculation, in that the foreperson did not say that he took what defense counsel had said as evidence or that what she said had affected his deliberations or verdict. In any event, the People continued, evidence of juror's thought processes were inadmissible under Evidence Code section 1150, subdivision (a),[5] therefore, there was no point to disclosing juror information in the hopes of uncovering evidence that jurors reached their verdict on the basis of what defense counsel had said. The People also asserted that there was no evidence any of the jurors had committed misconduct.

The trial court denied the request to disclose juror information, finding that a prima facie showing of good cause "to support a reasonable belief that jury misconduct

---

[5] That subdivision provides, "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either with or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."

16

occurred and that further investigation is necessary to provide the [c]ourt with adequate information to rule on a motion for new trial" had not been made. The trial court also concluded that any investigation would be into information that would be inadmissible. The court cited *People v. Sanchez* (1998) 62 Cal.App.4th 460, 475, 476 (*Sanchez*), which cited the following from *People v. Hedgecock* (1990) 51 Cal.3d 395, 418-419, "Evidence Code section 1150 'may be violated not only by the admission of jurors' testimony describing their own mental processes, but also by permitting testimony concerning statements made by jurors in the course of their deliberations. In rare circumstances a statement by a juror during deliberations may itself be an act of misconduct, in which case evidence of that statement is admissible. [Citation.] But when a juror in the course of deliberations gives the reasons for his or her vote, the words are simply a verbal reflection of the juror's mental processes. Consideration of such a statement as evidence of those processes is barred by Evidence Code section 1150.'" The *Sanchez* court went on to hold, "[W]here, as here, the affidavit or declaration suggests ""'deliberative error' in the jury's collective mental process—confusion, misunderstanding, and misinterpretion of the law,'" particularly regarding 'the way in which the jury interpreted and applied the instructions,' the affidavit or declaration is inadmissible. [Citation.] The mere fact that such mental process was manifested in conversation between jurors during deliberations does not alter this rule. [Citation.]" (*Sanchez*, *supra*, 62 Cal.App.4th at p. 476.) The trial court concluded that the foreman's statement about so-called misconduct "had to do with the internal misunderstanding of the jury, not any overt act that occurred during the deliberation process." The court pointed out that even defendant conceded

17

that the foreperson had agreed with defense counsel that the statements of the attorneys were not evidence.

Defendant here claims that the trial court abused its discretion (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 991) and violated his rights to due process of law, a fair trial and effective assistance of counsel in denying his request for disclosure of juror information. We cannot agree with defendant because, as we point out, the request simply made no sense. Moreover, defendant does not even assert how the information he hoped to uncover could have been admitted in light of Evidence Code section 1150.

4. *Restitution Fine*

The probation report recommended the sentencing court impose a restitution fine of $1,120, pursuant to section 1202.4, subdivision (b)(1), which provides for a fine between $280 and $10,000, to be set at the discretion of the sentencing court. At the same time, the report recommended that the terms for the receiving stolen property convictions be stayed pursuant to section 654. The sentencing court imposed the fine recommended by the probation report. Defendant did not object to this fine below, however, he objects to it now, claiming it represents the minimum fine of $280 times the number of convictions he suffered in violation of section 654.[6] Because the trial court stayed punishment for two of those convictions, defendant here argues, the court should not have imposed fines as to them. However, as the People point out, the record does not

---

[6] Section 1202.4, subdivision (b)(2) provides, "In setting a felony restitution fine, the court may determine the amount of the fine as the product of the minimum fine . . . multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted."

18

support defendant's premise that the sentencing court imposed fines for all four convictions. Therefore, there is no basis for us to order that half of defendant's restitution fine be stricken. Moreover, by failing to object to the fine below, defendant waived his current claim. (*People v. Trujillo* (2015) 60 Cal.4th 850; *People v. Aguilar* (2015) 60 Cal.4th 862*; People v. McCullough* (2013) 56 Cal.4th 589.)

## DISPOSITION

The trial court is directed to amend the minutes for December 2, 2013 to show that defendant admitted a serious prior conviction pursuant to section 667, subdivision (a). The trial court is further directed to strike the designation of the possession of stolen property conviction (count 4) as a violent felony on the Abstract of Judgment and, at number 4, to check the box for "current or prior serious or violent felony[.]" In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

KING
J.

19