Filed 5/27/15  P. v. Hoffman CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CURTIS LAVERN HOFFMAN,<br><br>    Defendant and Appellant. | 2d Crim. No. B254122<br>(Super. Ct. No. F493245)<br>(San Luis Obispo County) |

Curtis Lavern Hoffman appeals a judgment following his conviction of resisting an executive officer (Pen. Code, § 69),[1] a felony (count 1); public intoxication (§ 647, subd. (f)) (counts 2 and 6); resisting a peace officer (§ 148, subd. (a)(1)), a misdemeanor (counts 3 and 4); assault (§ 240), a misdemeanor (count 5); and unauthorized lodging (§ 647, subd. (e)) (count 7).  The jury also found Hoffman had a prior conviction for making criminal threats.  (§§ 422, 667, subd. (d), 1170.12 , subds. (b) & (c).)

We conclude, among other things, that the trial court did not err by only instructing the jury on the offense of unlawfully using force or violence to resist an executive officer performing his duty (§ 69) on count 1.  There was no substantial evidence to support an instruction on the lesser-included offense of misdemeanor resisting arrest (§ 148, subd. (a)(1)) on count 1. We affirm.

---

[1] All statutory references are to the Penal Code.

## FACTS

### *The July 19th Arrest*

On the morning of July 19, 2013, Paul Nelson was walking his dogs near the Morro Shores Mobile Home Park when he heard Hoffman yell, "I'll kill that dog." Nelson responded, "I couldn't let you hurt my dog." Hoffman threw a beer bottle towards Nelson's head. Nelson contacted Sheriff Deputy Eduardo Castaneda. Nelson told Castaneda that Hoffman "was acting crazy" and he was in a "brushy area" near the mobile home park. No camping is allowed in this area and the park had periodically posted no trespassing signs.

Castaneda testified he saw an aluminum can and a "big glass" bottle "fly out" toward Nelson. He asked Nelson to wait by the patrol car so that he could "attempt to contact" Hoffman who was inside "this brushy tree area." Castaneda located Hoffman who was "unsteady on his feet." Hoffman was "slurring his speech," and Castaneda smelled "a strong odor of alcohol."

Castaneda attempted to arrest Hoffman "for being intoxicated in public." He asked Hoffman to get down on his knees. Hoffman refused. Castaneda pulled a Taser from his holster. Hoffman started to "go down to his knees" and Castaneda was able to handcuff him. They walked toward the patrol car for 10 to 15 feet. Hoffman then "dropped to his knees" and then pretended to make "a loud snoring sound." Hoffman refused to walk to the patrol car. Castaneda and another officer had to drag him through a sandy area for 75 yards toward the patrol car. Hoffman then walked to the patrol car and spit sand at the officers.

### *The August 5th Arrest*

On the morning of August 5, 2013, Castaneda received a "disturbing-the-peace call" involving the area behind the Morro Shores Mobile Home Park. As he approached the area, he heard Hoffman yelling, "Get off my land" and "You're trespassing." Castaneda saw Hoffman near a tent. There were several empty beer bottles and beer cans on the ground. Hoffman was intoxicated. He ran into the tent and "attempted to zip up the front flap of the tent." Castaneda decided to arrest Hoffman for public intoxication and "illegal lodging."

2

Castaneda went to the tent and handcuffed Hoffman. He asked Hoffman to stand up and walk to the patrol car. Hoffman "ignored" him. Castaneda and Sheriff Deputies Jason Nadal and Sandra Arauza lifted Hoffman and carried him in the direction of the patrol car. Then they placed Hoffman on a blanket and dragged the blanket 30 to 40 yards, but the "sand was too thick." Castaneda and Nadal placed "compliance" holds on Hoffman and got him to his feet. Hoffman began walking to the patrol car.

Castaneda testified that, 15 to 20 yards before reaching the patrol car, Hoffman kicked him in his ankle. He felt "a sharp pain" and told Hoffman "to stop kicking [him]." Hoffman "immediately tried to strike [Castaneda] again." Castaneda said Hoffman "lifted his leg once again and brought it down to where my left ankle was, but [Castaneda] was able to move it." Hoffman also tried to resist by spitting in the direction of the officers. Castaneda said the officers placed "a spit mask" on him to prevent him from spitting and a "ripp restraint" around his legs and ankles to prevent him from kicking.

Arauza testified she did not see Hoffman kick Castaneda. She "noticed Deputy Castaneda moved," and Castaneda told Hoffman "not to kick him."

Nadal testified he did not remember "anything specifically happening" during the arrest of Hoffman. He was asked, "Did you ever hear Deputy Castaneda say 'stop kicking me'?" Nadal: "I did hear words to that effect."

Hoffman did not testify.

In count 1 of the information, the People alleged that during the August 5th incident Hoffman committed a felony (§ 69) by 1) "willfully and unlawfully" attempting "by means of threats and violence to deter and prevent" Castaneda "from performing a duty imposed upon such officer by law," and 2) "knowingly resist[ing] by the use of force and violence said executive officer in the performance of his/her duty."

The trial court gave an instruction to the jury on the second prong of the section 69 felony for count 1. It stated the People had to prove Hoffman "unlawfully used force or violence to resist" the arrest. It did not to give a lesser-included offense instruction.

3

DISCUSSION

*Not Instructing on a Lesser-included Offense*

Hoffman contends the trial court erred by only giving the jury an instruction on felony resisting an officer by force or violence (§ 69) on count 1. He claims the trial court committed reversible error by not also instructing jurors on the lesser-included offense of misdemeanor resisting arrest (§ 148, subd. (a)(1)). We disagree.

For count 1, the trial court instructed jurors, "To prove that the defendant is guilty of this crime [§ 69], the People must prove that: [¶] 1. The defendant unlawfully used force or violence to resist an executive officer; [¶] 2. When the defendant acted, the officer was performing his lawful duty; AND [¶] 3. When the defendant acted, he knew the executive officer was performing his duty." The court did not give an instruction on a lesser-included offense for count 1.

"'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence.'" (*People v. Smith* (2013) 57 Cal.4th 232, 239.) "That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged." (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)

"Section 69 '"sets forth two separate ways in which an offense can be committed."'" (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 984.) "'"The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty."'" (*Ibid.*) "The first type of offense can be established by '"[a] threat, unaccompanied by any physical force"' and may involve either an officer's immediate or future performance of his duty." (*Id.* at p. 985.) "The second type of offense involves '"force or violence"' by the defendant against an officer engaged in his duties at the time of the defendant's resistance." (*Ibid.*)

4

"Section 148, subdivision (a)(1) provides in part, '[e]very person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty' has committed a punishable offense." (*People v. Carrasco*, *supra*, 163 Cal.app.4th at p. 985.) "Because an accused cannot have resisted arrest forcefully without also having resisted arrest, . . . section 148, subdivision (a) is a lesser included offence to section 69's second prong." (*Ibid.*)

But "the failure to instruct with section 148, subdivision (a)" is "not error" where "there was no substantial evidence that would support a conviction of the lesser offense." (*People v. Carrasco*, *supra*, 163 Cal.App.4th at p. 985.)

In *Carrasco*, the defendant was convicted of resisting an executive officer by force or violence under section 69. On appeal, appellant claimed the trial court erred by not giving the jury a lesser-included offense instruction on misdemeanor resisting arrest. (§ 148, subd. (a).) The Court of Appeal disagreed. It noted that while resisting arrest, appellant "placed his hands and arms underneath his body, was 'yelling, *kicking*, [and] cussing,' and said he would 'kick [the officers'] ass[es].'" (*People v. Carrasco*, *supra*, 163 Cal.App.4th at p. 986, italics added.) It said, "There was no contrary evidence . . . ." (*Ibid.*) "Hence, the jury would have had no rational basis to conclude appellant wrestled with the officers . . . but the struggle did not involve force or violence; accordingly, the trial court properly instructed the jury by not instructing it with section 148, subdivision (a) as a lesser included offense." (*Ibid.*) The court said, "[I]f appellant resisted the officers at all, he did so forcefully, thereby ensuring no reasonable jury could have concluded he violated section 148, subdivision (a)(1), but not section 69." (*Id*. at p. 985.)

*Carrasco* is analogous to the present case. The People note that "the prosecution's only theory underlying the violation of section 69 was that appellant used force or violence by kicking Deputy Castaneda." The prosecutor told jurors the section 69 offense occurred "on August 5th. This was *the kick*." (Italics added.) The People's evidence showed Hoffman kicked Castaneda while Castaneda was performing his duty of arresting him.

5

Hoffman notes that neither Arauza nor Nadal saw him kick Castaneda. Arauza may not have been in a position to see the kick and Nadal did not remember it. But they both corroborated Castaneda's account when they testified they heard him tell Hoffman to stop kicking him. Arauza saw Castaneda move before making that statement. The People also introduced a photograph of Castaneda's "left pant leg and left boot." Castaneda testified the photograph showed "a dirt mark in the area where Mr. Hoffman kicked me." Hoffman did not present evidence to contradict Castaneda. There was no substantial evidence to support a lesser-included offense instruction on count 1.

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

6

Jacquelyn H. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Christina A. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Mary Sanchez, Zee Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.