Filed 1/27/22  P. v. Talamantes CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B306801 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA463954) |
| v. | |
| ROBERTO TALAMANTES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Stephen A. Marcus, Judge.  Affirmed.

Miriam K. Billington, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven E. Mercer and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Roberto Talamantes was convicted, after a jury trial, of one count of assault with a firearm (Pen. Code, § 245, subd. (a)(2))[1] and one count of mayhem (§ 203), with the addition of great bodily injury and firearm enhancements for both counts.

Talamantes waived his right to a jury trial on the allegations that he had suffered two strike priors (§§ 667, subds. (b)-(i); 1170.12, subds. (a)-(d)), and the trial court held a bench trial. The trial court found the allegations true and sentenced Talamantes to a determinate term of 13 years, plus an indeterminate term of 75 years to life in state prison under the Three Strikes law. The trial court denied Talamantes's motion to strike at least one of the strikes under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, and section 1385.

On appeal, Talamantes asserts that the trial court should have stricken at least one of his strike priors and sentenced him to 33 years in prison, rather than 13 plus 75 to life, because (1) he does not fall within the "spirit" of the Three Strikes law, and (2) recent felony sentencing trends favor giving defendants a chance at release before death.

The trial court did not abuse its discretion. We affirm.

## BACKGROUND

On December 21, 2017, Talamantes was at the home of Anthony Moreno and Karla Amparan, where he had been living since September 2017. Anthony and Karla were also home, along with Anthony's brother, Christopher Moreno. Anthony knocked on Talamantes's door and asked him to turn down his music.

---

[1] Undesignated statutory references herein are to the Penal Code.

2

Anthony and Talamantes began to argue, and Anthony told Talamantes that he had to move out. At some point, the argument between Talamantes and Anthony became physical, and Karla and Christopher joined Anthony and Talamantes in Talamantes bedroom. After continued fighting, Talamantes grabbed a firearm and shot Anthony in his forearm. The bullet went through Anthony and hit Christopher in his abdomen. Meanwhile, Karla left the room to call 911 and when Talamantes tried to leave the house, she blocked him from leaving, saying he needed to wait for the police. Talamantes then shot Karla by holding the gun onto her right thigh and firing. The bullet traveled through her right thigh into her left leg. Talamantes then left the house and checked himself into Silver Lake Medical Center, where he was placed on a psychiatric hold.

Before this incident, Talamantes had two prior strike convictions: In 2006, he was convicted of violation of section 273.5, domestic violence with injury, with a weapons enhancement. In 2007, he was convicted of violation of section 245, subdivision (a)(1), assault with a deadly weapon. He had a subsequent felony conviction in 2009 for possession of narcotics and contempt of court, and a misdemeanor conviction for domestic battery in 2014.

On July 28, 2020, the trial court declined to strike a strike prior, and sentenced Talamantes to a determinate term of 13 years, plus 75 years to life in state prison.

Appellant timely filed a notice of appeal on July 28, 2020.

**A. Standard of Review**

" '[T]he Three Strikes law initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders.' " (*People v.*

*Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*), quoting *Romero, supra* 13 Cal.4th at p. 528.) Under California Supreme Court precedent, there are "stringent" standards that a court must follow in determining whether an exception to the Three Strikes sentencing scheme is warranted. (*Carmony*, *supra*, 33 Cal.4th at p. 377.) The trial court " 'must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' " (*Ibid.*, quoting *People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) Abuse of discretion may be present where a trial court considers impermissible factors or does not consider relevant ones. (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

The Three Strikes law "carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) Accordingly, " ' "a decision will not be reversed merely because reasonable people might disagree." ' " (*Id.* at p. 377.) " ' " 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge' " '. . . . [A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Ibid.*)

4

**B. The Trial Court Did Not Abuse Its Discretion in Denying Appellant's Motion to Strike Under *Romero***

We first consider whether Talamantes was outside the Three Strikes law's spirit and therefore should be treated as though he did not have previous serious or violent felony convictions. (*Williams, supra,* 17 Cal.4th at p. 161.) He argues that the trial court should have concluded that his history of schizophrenia and impaired cognitive abilities, life-long substance abuse, age at the time of his prior strikes and when he could be released, and the circumstances surrounding his current offenses take him outside the spirit of the Three Strikes law. Talamantes argues that the trial court was required to consider these "cumulative" circumstances under *People v. Garcia* (1999) 20 Cal.4th 490, 503 (*Garcia*).

Talamantes claim fails because the trial court reasonably concluded that his current use of a firearm against people with whom he was living, together with his prior criminal history, place him within the spirit of Three Strikes law, and because the trial court properly considered Talamantes's background, character, and prospects. (*Williams*, *supra*, 17 Cal.4th at p. 161.)

We consider now the trial court's review of each relevant issue.

**a. Criminal History**

First, the trial court considered Talamantes prior strike convictions, noting in particularly that his 2006 strike conviction for domestic violence resulting in great bodily injury and 2007 strike conviction for assault with a deadly weapon, both involved violence and the use of weapons against people with whom Talamantes was living. The trial court concluded that the record established a pattern of Talamantes using violence when "dealing

5

with people."

The trial court also properly considered whether his 2006 and 2007 convictions, both for violence against the same victim, (1) should be considered as a single aberrant period, and (2) were too remote in time from his other convictions.

First, to determine whether the first two strikes in 2006 and 2007 constituted a single, aberrant period, the trial court looked at Talamantes's entire criminal record. (*See Garcia, supra,* 20 Cal.4th at p. 503 [holding that a "single period of aberrant behavior for which [defendant] served a single prison term," may justify discretion under section 1385].) It found that after the 2006 conviction, Talamantes spent a year in county jail, and after his 2007 conviction, he spent two years in state prison. Talamantes was then convicted in 2009 for contempt of court and possession of a controlled substance, and spent four years in state prison. He was convicted in 2014 of domestic battery. The trial court also noted Talamantes had prior juvenile adjudications of first degree robbery and possession of a firearm. The trial court noted on the record that Talamantes has four adult convictions: three felonies and a misdemeanor. The court thus concluded that the 2006 and 2007 convictions were not aberrant.

Talamantes points to *Garcia,* where "defendant's prior convictions all arose from a single period of aberrant behavior for which he served a single prison term . . . and his criminal history does not include any actual violence." (*Garcia*, *supra*, 20 Cal.4th at p. 503.) The facts before us are quite different. Talamantes's lengthy period of violent behavior was noted by the trial court and supported by the record. This case did not involve a single period of aberrant behavior.

6

Talamantes also points to *People v. Avila* (2020) 57 Cal.App.5th 1134 (*Avila*)*,* where the court found that "Avila has not committed a violent felony since his [prior] strike offenses, *showing that the severity of his record is decreasing.*" (*Id.* at p. 1143, italics added.) Here, the current crimes are particularly violent, and Talamantes is fortunate that no one died. His record does not establish a decreasing pattern of severity of his crimes.

Second, regarding remoteness, the trial court subtracted the time Talamantes spent in prison between his second and third strikes, and determined that there had only been, at most, the equivalent of four years in between the two when he was not incarcerated. (See *People v. Mayfield* (2020) 50 Cal.App.5th 1096, 1108 [reversing trial court for failure to subtract prison time].) The trial court concluded that the strikes were not remote.

Finally, the trial court found Talamantes's current convictions "particularly violent." Talamantes argues that he was defending himself against three people that he thought were threatening his life, and that his mental illness and cognitive issues "likely impaired his judgement." Talamantes testified that Anthony used profanity, kicked the door in, pushed him, and punched him, so he pulled out a gun to try to scare Anthony. He stated that Karla then came in and threw his heater. He also testified that he ended up on the floor and was intimidated by Anthony, Karla, and Christopher all standing over him, so he shot when Anthony started to "rush me, push me." In contrast, Anthony testified that it was Talamantes who was first aggressive and violent. More importantly, the jury clearly rejected Talamantes's "self-defense" version of the facts. The trial court had no obligation to sentence Talamantes as if he had been acquitted.

7

The trial court properly determined that the criminal history factor pointed in favor of denying the *Romero* motion because Talamantes has a pattern of violent behavior against people with whom he lives. This case was especially egregious as it involved a shooting at close range of all three victims, particularly as to Karla, who was shot twice in the leg at close range for simply trying to prevent him from leaving the house. (See *Carmony*, *supra*, 33 Cal.4th at pp. 373, 378–379.)

### b. Background and Character
#### i. Mental Illness and Cognitive Abilities

Talamantes argues that his mental health and cognitive abilities take him out of the spirit of the Three Strikes law. The trial court reviewed the medical expert's report and "had a lot of problems" with it, namely that the expert himself, Dr. Schug, thought that Talamantes could be malingering when it came to his mental illness. The trial court pointed to additional reasons he thought Talamantes was malingering: that he checked himself into a mental hospital after he shot his roommates, despite never before being hospitalized, and then called the police.

Talamantes takes issue with the trial court's focus on malingering, pointing out that Dr. Schug's report states that his "intellectual defects may have negatively impacted his performance on malingering measures . . . . [I]nterpretations regarding the defendant's possibly malingering psychiatric illness must be made with caution." The trial court also did not acknowledge on the record that Dr. Schug found that Talamantes came out on "the profound impairment range (0.4 )" for mental functioning such that his "overall performance would be considered comparable to other individuals with schizophrenia."

In addition, Dr. Schug's report and the evidence from the hospital that Talamantes checked himself into showed that Talamantes had "previously been prescribed antipsychotic medication, but . . . had not taken it in 8-9 months." He had also been seeing a psychologist and taking antipsychotic medication in prison.

Even where a trial court erroneously failed to consider an appellant's mental health condition at all—which is not the case here—we have declined to find an abuse of discretion where "[t]he record reflects the trial court considered a wide range of appropriate factors in passing sentence, particularly the nature and circumstances of appellant's present and past convictions." (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 993.) Here, the trial court did consider the issue of Talamantes's mental health. The trial court was under no obligation to accept the portions of Dr. Schug's report that were helpful to Talamantes and reject the portions that undermined Talamantes's arguments. The trial court was entitled to express grave concern over Dr. Schug's conclusion that Talamantes may "be exaggerating—if not outright feigning—some symptoms of mental illness." We find the trial court acted within its discretion in weighing the factors discussed by Dr. Schug, and deciding whether his conclusions were persuasive.

### ii. Drug and Alcohol Addiction

Talamantes next asserts that his drug addiction is mitigation justifying dismissal of at least one strike. He asserts that his criminal history has a nexus with his drug and alcohol addictions dating back to when he was a teenager. Talamantes cites Dr. Schug's report, which states that Talamantes presented with drug and alcohol use disorders.

9

The trial court considered Talamantes's substance abuse, which it found "not well documented," and also found that there was not any indication that Talamantes "did anything about his drug offense." In *Carmony,* the Supreme Court found that Carmony had a long history of drug and alcohol abuse, that alcohol contributed to "all of his prior offenses," and that "he had attended Alcoholics Anonymous meetings." Nonetheless, the court held that the trial court did not abuse its discretion in declining to strike the strike. (*Carmony*, *supra*, 33 Cal.4th at p. 372.) Talamantes has cited no case holding that a court must strike a strike if the defendant is addicted to drugs.

### iii. Age

Talamantes makes two arguments regarding age. First, he argues that his 2006 and 2007 crimes, had they been committed under current law, would have been considered youth offenses. He admits that age is not dispositive alone, but argues it is "plainly relevant to the nature and circumstances of the strikes and could be a mitigating factor." (*Avila, supra,* 57 Cal.App.5th at pp. 1141–1142.)

The trial court did not, when discussing the *Romero* motion, *explicitly* reference Talamantes's age when he committed the prior strikes. But the court *did* state that it read Talamantes's sentencing memorandum. That memorandum states his ages at the time of the strike priors. The trial court also explicitly noted Talamantes's juvenile record as a factor leaning towards *not* striking the strikes because it was evidence of his extensive, serious criminal history. When a court is silent as to an issue relevant to the *Romero* analysis, we must presume it did *not* abuse its discretion as long as there is no contravening evidence in the record. (*Carmony, supra,* 33 Cal.4th at p. 378;

10

*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)  Here there is no contravening evidence.

Second, Talamantes contends that the length of his sentence of 13 years plus 75 years to life must be considered to avoid an "unjust sentence," because it means he will die in prison, as opposed to possibly being released in his sixties if he received the 33 year sentence he requested.  (Citing *Garcia*, *supra*, 20 Cal.4th at p. 500.)  Talamantes argues that if a strike prior and the firearm enhancement for his mayhem conviction had been stricken, he would have been eligible for parole in his mid-sixties (after 33 years serving 85 percent of his sentence).  He asserts at that age, "the chances that he will re-offend will be greatly reduced," citing a 2017 Federal Sentencing Commission report noting a negative correlation between age and the probability of recidivism.

While some courts have held that age at release can be a factor in support of mitigation when one will likely die in prison, (*see e.g.*, *Avila*, *supra*, 57 Cal.App.5th at p. 1143), there is no controlling precedent that requires sentencing courts to avoid Three Strikes sentences that will result in the defendant dying in custody.  (*See, e.g.*, *People v. Haller* (2009) 174 Cal.App.4th 1080, 1088-1089 [Three Strikes sentence of 78 years to life for 42-year-old defendant upheld for charges of assault with a deadly weapon and criminal assault].)

In addition, Talamantes's various arguments as to felony sentencing trends favoring giving him a chance at release before death do not change our conclusion.  Talamantes points to a 2012 change in the Three Strikes law removing non-violent, non-serious felonies from the Three Strikes scheme.  But Talamantes does not explain why that law has any direct bearing on the

11

outcome here; only that this, along with changes in other areas of the law, show that life sentences are increasingly disfavored. The fact that the available punishment for the type of offense Talamantes actually committed includes the sentence he received speaks volumes about the Legislature's desire to grant trial courts the discretion to impose such sentences.

### c. Review of All Factors

Based on the trial court's review of the factors raised by Talamantes and proper application of *Carmony*, we hold that the trial court did not abuse its discretion. (*Carmony*, *supra*, 33 Cal.4th at p. 377.) A repeat criminal falls outside the Three Strikes law's spirit only in limited circumstances. (*Id.* at p. 378.) The trial court's decision was not so arbitrary or irrational that no reasonable person could possibly agree. (*Id.* at p. 377.) We must ask whether "the ruling in question '*falls outside the bounds of reason*' under the applicable law and the relevant facts." (*Williams*, *supra*, 17 Cal.4th at p. 162, italics added; *Garcia, supra,* 20 Cal.4th at p. 503.) Due to the violent nature of Talamantes's current crimes and past, violent strikes, we cannot hold that it does. The trial court was well within its discretion in imposing sentence without striking a strike or enhancement.

## DISPOSITION

The judgment is affirmed.


HARUTUNIAN, J.[*]

We concur:


GRIMES, Acting P. J.


STRATTON, J.

---

[*]     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.